**No. 25-___**

# United States Court of Appeals for the Federal Circuit

---

IN RE SAP AMERICA, INC.,
*Petitioner.*

---

On Petition for Writ of Mandamus to the
United States Patent and Trademark Office in No. IPR2024-01496

---

## PETITION FOR A WRIT OF MANDAMUS

John D. Vandenberg
Samuel Thacker
Andrew M. Mason
Sarah E. Jelsema
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com

*Counsel for Petitioner
SAP America, Inc.*

# CERTIFICATE OF INTEREST

Counsel for the Petitioner SAP America, Inc. certifies that the following information is accurate and complete to the best of our knowledge:

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| SAP America, Inc. | SAP SE | SAP America, Inc. is a wholly owned subsidiary of SAP SE, which is a publicly traded company. No publicly held company owns 10% or more of the stock of SAP SE. |

| 4. Legal Representatives. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). | | |
|---|---|---|
| Roy Chamcharas Klarquist Sparkman, LLP | Todd M. Siegel Klarquist Sparkman, LLP | |

| 5. Related Cases. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? |
|---|
| Yes (separate Notice of Related Case Information filed). |

| 6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). |
|---|
| N/A |

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................. i

I.    INTRODUCTION ........................................................................1

II.   JURISDICTION .........................................................................3

III.  RELIEF SOUGHT .......................................................................3

IV.   BACKGROUND ...........................................................................4

V.    ARGUMENT ................................................................................7

      A.    Mandamus Relief Is Appropriate ...........................................7

      B.    The Patent Office's Retroactive Rescission of Its
            Binding Agency Guidance Violated SAP's Due Process Rights..........7

            1.    SAP Reasonably Relied on the Vidal Memo..............................8

            2.    SAP's Reliance Interest Was Protected by Due Process ..........11

            3.    The Rescission of the Vidal Memo. Was Retroactive ..............13

            4.    The Patent Office Violated SAP's Due Process Rights............14

      C.    Denying Institution Based on SAP Not Agreeing to
            Forgo System Prior Art in the District Court Action Rewrites
            the Estoppel Statute and Violates the Separation of Powers ..............16

VI.   CONCLUSION..............................................................................20

CERTIFICATE OF COMPLIANCE....................................................21

CERTIFICATE OF SERVICE ...........................................................22

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*BMW of North Am., LLC v. NorthStar Sys. LLC*,
   2024 WL 967815 (P.T.A.B. Mar. 6, 2024) ............................................................9

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ........................................................10

*Cemex Inc. v. Dep't of the Interior*,
   560 F. Supp. 3d 268 (D.D.C. 2021) ....................................15

*City of Portland v. United States*,
   969 F.3d 1020 (9th Cir. 2020) ...........................................19

*De Niz Robles v. Lynch*,
   803 F.3d 1165 (10th Cir. 2015) ..........................................10

*FDA v. Wages & White Lion Invs., LLC*,
   145 S. Ct. 898 (2025) ........................................................15

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ..........................................................12

*HP Inc. v. Universal Connectivity Techs., Inc.*,
   2025 WL 1040187 (P.T.A.B. Apr. 8, 2025) .........................7

*In re Palo Alto Networks, Inc.*,
   44 F.4th 1369 (Fed. Cir. 2022) ............................................3

*Ingenico Inc. v. IOENGINE, LLC*,
   136 F.4th 1354 (Fed. Cir. 2025) ........................................17

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880) ..........................................................16

*Ky. Dept. of Corrections v. Thompson*,
   490 U.S. 454 (1989) ..........................................................12

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ..........................................................13

ii

*Massachusetts v. Mellon*,
 262 U.S. 447 (1923) .................................................................16

*Mejia v. Garland*,
 2024 WL 2944002 (1st Cir. June 11, 2024).............................16

*Meta Platforms, Inc. v. Eight kHz, LLC*,
 2024 WL 100929 (P.T.A.B. Jan. 9, 2024)..................................9

*Mexichem Fluor, Inc. v. EPA*,
 866 F.3d 451 (D.C. Cir. 2017)..................................................14

*Miller v. French*,
 530 U.S. 327 (2000) .................................................................16

*Mistretta v. United States*,
 488 U.S. 361 (1989) .................................................................16

*Motorola Sols., Inc. v. STA Grp. LLC*,
 2024 WL 1093736 (P.T.A.B. Mar. 13, 2024) .............................9

*Motorola Sols., Inc. v. Stellar, LLC*,
 2025 WL 1503220 (P.T.A.B. May 23, 2025)............................13

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
 989 F.3d 1375 (Fed. Cir. 2021) .............................................3, 7

*Olim v. Wakinekona*,
 461 U.S. 238 (1983) .................................................................11

*Patchak v. Zinke*,
 583 U.S. 244 (2018) .................................................................16

*Perry v. Sindermann*,
 408 U.S. 593 (1972) ........................................................... 11, 12

*Reyes v. Garland*,
 11 F.4th 985 (9th Cir. 2021)....................................................16

*Sandin v. Conner*,
 515 U.S. 472 (1995) .................................................................11

*Smith v. Metro. Sch. Dist. Perry Twp.*,
128 F.3d 1014 (7th Cir. 1997) .................................................................10

*Sotera Wireless, Inc. v. Masimo Corp.*,
2020 WL 7049373 (P.T.A.B. Dec. 1, 2020) ................................ passim

*Tafas v. Dudas*,
511 F. Supp. 2d 652 (E.D. Va. 2007) ....................................................10

*The Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ................................................................................11

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) ........................................................................ 18, 19

*Washington v. Trump*,
768 F. Supp. 3d 1239 (W.D. Wash. 2025) ..........................................19

**Constitutional Provisions**

U.S. Const. amend V....................................................................... passim

**Statutes**

28 U.S.C. § 1295 ......................................................................................3

28 U.S.C. § 1651 ......................................................................................3

35 U.S.C. § 2 ...........................................................................................10

35 U.S.C. § 102 ....................................................................................4, 17

35 U.S.C. § 103 ....................................................................................4, 17

35 U.S.C. § 141 ........................................................................................3

35 U.S.C. § 311 ......................................................................................17

35 U.S.C. § 315 ......................................................................................17

35 U.S.C. § 316 ......................................................................................10

35 U.S.C. § 319 ........................................................................................3

35 U.S.C. § 321 ......................................................................................17

35 U.S.C. § 325 ...................................................................................................17

**Other Authorities**

William C. Neer, Comment, *Discerning the Retroactive Policymaking Powers of the United States Patent and Trademark Office*, 71 Admin. L. Rev. 413, 430–33 (2019)...................................................................................................................10

## I.   __INTRODUCTION__

The Patent Office's discretion to deny a meritorious inter partes review ("IPR") petition has limits. It is cabined by the U.S. Constitution, the IPR statute, and the Patent Office's own binding agency guidance. In discretionarily denying SAP's (and others') IPR petitions this spring, the Patent Office violated each of these restrictions.

The Patent Office violated the 5th Amendment's Due Process Clause by retroactively revoking its "binding agency guidance" that had guaranteed SAP's petitions would *not* be discretionarily denied based on parallel district court litigation, after SAP had reasonably acted in reliance on that binding guidance.

Specifically, Director Vidal's June 21, 2022, Memorandum ("Vidal Memo."), "issued under the Director's authority to issue binding agency guidance to govern the PTAB's implementation of various statutory provisions," stated that the PTAB would not discretionarily deny institution based on parallel district court litigation if the petitioner submitted a *Sotera* stipulation. (Appx27.) SAP relied on that binding agency guidance in part by taking its time to carefully investigate the prior art and prepare the petition it filed on October 1, 2024, knowing that such delay would not risk a discretionary denial because SAP would submit a *Sotera* stipulation.

But then the Patent Office, headed by new Acting Director Stewart, withdrew that guidance on February 28, 2025, without explaining why it was withdrawn and

without addressing the reliance interests of petitioners such as SAP. (Appx81.). Nearly a month later, the Patent Office stated that this rescission would apply, retroactively, to all pending IPR petitions. (Appx83.) The Board then discretionarily denied SAP's petition based on parallel district court litigation despite SAP's *Sotera* stipulation and despite finding that SAP's petition met the statutory merits threshold: "Petitioner's challenge is straightforward and definitely meets the standard for institution." (Appx13.) This retroactive rescission of binding guidance on which SAP had reasonably relied violated due process.

The Office also violated the separation of powers by discretionarily denying SAP's (and others') IPR petitions for reasons that effectively rewrite the statute governing IPRs. Specifically, as a *de facto* condition for institution, the Office now pushes petitioners to stipulate in parallel district court litigation to a disproportionate forfeiture of public-use and on-sale invalidity defenses that petitioners cannot pursue in IPR. This conflicts with the IPR statute, which establishes a narrower estoppel proportional to the unpatentability grounds a party may assert in IPR. The Board's denial of SAP's petition relied heavily on SAP not acceding to this *ultra vires* demand for a disproportionate estoppel: "We find particularly significant that, if we were to institute review and trigger Petitioner's *Sotera* stipulation, Petitioner would remain free to pursue a system-based invalidity challenge in the district court based

on essentially the same prior art that would be at issue here." (Appx14.) This new policy is an unconstitutional agency end run around the statute.

These constitutional violations distinguish the Court's past decisions denying mandamus review from IPR institution denials or de-institution decisions.

## II.    <u>JURISDICTION</u>

"While there is no avenue for direct appeal of decisions denying institution, . . . judicial review is available in extraordinary circumstances by petition for mandamus." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1379 (Fed. Cir. 2021). In particular, the Court may review "the Director's exercise of his discretion to deny institution" where there are "colorable constitutional claims." *Id.* at 1382. *See* 28 U.S.C. §§ 1295(a)(4)(A), 1651; 35 U.S.C. §§ 141(c), 319; and *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (reviewing constitutional claim relating to institution denial upon petition for a writ of mandamus).

## III.    <u>RELIEF SOUGHT</u>

The Court should order the Office to apply its June 21, 2022, "binding agency guidance" to SAP's petitions, and all still-active petitions filed before February 28, 2025, and to not pressure SAP or any IPR petitioner into forfeiting in parallel district court litigation an invalidity ground it could not have reasonably asserted in their IPR petition.

## IV.   **BACKGROUND**

After being sued in February 2024 in the Eastern District of Texas for alleged infringement of four patents, SAP filed IPR petitions on three of the asserted patents. The petition at issue here was filed October 1, 2024. (Appx104.) On February 11, 2025, SAP filed its *Sotera* stipulation agreeing (contingent on institution) not to pursue any ground of unpatentability in district court that was raised or reasonably could have been raised in any instituted IPR (i.e., any Section 102 or 103 invalidity defense based on prior art patents or printed publications). (Appx80; Appx104.)

Under Director Vidal's binding June 2022 memorandum, SAP's stipulation ensured that the Office would not deny institution of the IPR based on the parallel district court litigation. (Appx27 ("[T]he PTAB will not discretionarily deny institution in view of parallel district court litigation where a petitioner presents a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the PTAB.").) The Vidal Memo. was "issued under the Director's authority to issue binding agency guidance" (*id.*) and "applie[d] to all proceedings pending before the Office" (Appx33).

Director Vidal issued this guidance based on stakeholder feedback (Appx26, Appx44), post-*Sotera* institution statistics (Appx35) showing institution was rarely

denied when a petitioner made some type of stipulation[1], and the precedential *Sotera* decision itself, which found a *Sotera* stipulation to weigh "strongly" against discretionary denial because it "mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions" and ensures that IPR serves as a "true alternative" to the district court litigation for the grounds that can be raised in IPR. *Sotera Wireless, Inc. v. Masimo Corp.*, No. IPR2020-01019, 2020 WL 7049373, at *7 (P.T.A.B. Dec. 1, 2020).

On February 28, 2025, the Office issued a three-sentence website post rescinding the Vidal Memo., without indicating to which cases this rescission would apply. (Appx81.) On March 24, the Office issued a memorandum (the "Boalick Memo.") announcing that the February 28 rescission would apply not only prospectively to petitions filed after that date, but also retroactively to "any case in which the Board has not issued an institution decision, or where a request for

---

[1]    The PTO conducted a study finding that only a small percentage of IPRs (e.g., 2.9% (2 out of 68) in Q1 of 2022) were denied institution when a petitioner made some type of stipulation (including narrower *Sand* stipulation agreeing not to pursue only the *same* grounds raised in district court). (Appx17; Appx21.)

rehearing or Director Review of an institution decision was filed and remains pending." (Appx83.)[2] The Boalick Memo. stated that the Vidal Memo. "was intended to provide guidance while the USPTO proposed potential rulemaking, but the USPTO did not subsequently propose a final rule," and thus, "[i]n the absence of rulemaking, the USPTO [had] rescinded the [Vidal Memo.] to restore policy in this area to the guidance in place before the [Vidal Memo.]." (Appx82.)

On April 7, 2025, the Board denied institution, primarily based on the finding that SAP's *Sotera* stipulation had "limited practical effect" because it did not cover the prior art system described in part by the printed publications cited in the IPR. (Appx11–12; Appx14) ("We find particularly significant that, if we were to institute review and trigger Petitioner's *Sotera* stipulation, Petitioner would remain free to pursue a system-based invalidity challenge in the district court based on essentially the same prior art that would be at issue here.").)

On April 17, 2025, SAP filed a request for Director Review of the Board's decision denying institution, arguing, among other things, that it was contrary to the *Sotera* decision and other post-*Sotera* institution decisions where corresponding system art similarly was alleged to be at play in district court. (Appx88; Appx94–

---

[2]    Unlike the Vidal Memo., the Patent Office issued the Boalick Memo. without any feedback from stakeholders.

98) (citing *e.g.*, *HP Inc. v. Universal Connectivity Techs., Inc.*, No. IPR2024-01428, 2025 WL 1040187, at *3–4 (P.T.A.B. Apr. 8, 2025)).) Without explanation, the Director denied SAP's requests for Director Review of the denials of institution of three SAP petitions in a single sentence: "[u]pon consideration of the requests, it is: ORDERED that the requests for Director Review are denied." (Appx2.)

## V.    ARGUMENT

### A.    Mandamus Relief Is Appropriate

To obtain the remedy of mandamus, a "petitioner must: (1) show that it has a clear and indisputable legal right; (2) show it does not have any other adequate method of obtaining relief; and (3) convince the court that the writ is appropriate under the circumstances." *Mylan*, 989 F.3d at 1382.

SAP's petition meets these conditions for mandamus. Due process and separation of powers are clear and indisputable legal rights applicable to SAP, and SAP's rights were violated, as explained further below. SAP has no other method of obtaining relief, as "there is no avenue for direct appeal of decisions denying institution." *Id.* at 1379. And the writ is appropriate under the circumstances in part because parties before the Patent Office should not be penalized for reasonably relying on the agency's binding guidance.

### B.    The Patent Office's Retroactive Rescission of Its Binding Agency Guidance Violated SAP's Due Process Rights

The Patent Office violated SAP's constitutional due process rights by

retroactively applying its rescission of the Vidal Memo. to SAP's pending IPR.

SAP filed its petition for IPR on October 1, 2024. Nearly six months later, on March 24, 2025, the Patent Office decided to retroactively apply the rescission of the Vidal Memo. to IPRs pending before the February 28, 2025, rescission of the Vidal Memo. (Appx83.) This rescission greatly changed the legal landscape, leading to severe consequences for past actions SAP had taken in reliance on the Vidal Memo's binding agency guidance.

The Vidal Memo. gave SAP and others several clear benefits and expectations when contemplating filing an IPR petition in response to a patent infringement action. Primarily, any petitioner willing to make a *Sotera* stipulation would not face discretionary denial based on a parallel district court action. Such petitioners could utilize the full one-year statutory period following service of a complaint alleging infringement, without being penalized with the risk of denial on that ground. They remained free to assert in district court those invalidity defenses not permitted in IPR, including on-sale and public-use prior art, even if based on products described in the IPR-asserted publications. For such petitioners, any petition that met the statutory criteria—like SAP's petition here—was virtually guaranteed institution.

### 1.     SAP Reasonably Relied on the Vidal Memo.

It was reasonable for SAP and other IPR petitioners to act in reliance on these expectations and benefits. First, the Vidal Memo. described itself as "binding agency

guidance" (Appx27), assuring IPR petitioners that the Board panels reviewing their petitions would abide by this guidance.

Second, the Board consistently followed the Vidal Memo.'s binding agency guidance, such that filing a timely *Sotera* stipulation was a *de facto* guarantee that an IPR petition would not be denied based on a parallel district court action. *See, e.g.*, *BMW of North Am., LLC v. NorthStar Sys. LLC*, No. IPR2023-01049, 2024 WL 967815, at *4 (P.T.A.B. Mar. 6, 2024) ("Under the mandatory *Fintiv* guidance, this [*Sotera*] stipulation is dispositive."); *Meta Platforms, Inc. v. Eight kHz, LLC*, No. IPR2023-01005, 2024 WL 100929, at *5–6 (P.T.A.B. Jan. 9, 2024) (declining to exercise discretion to deny institution due to a petitioner's *Sotera* stipulation, and rejecting, as contrary to *Sotera* and the Vidal Memo., a patent owner's arguments that the stipulation was insufficient because it carved out the right to assert overlapping system art in district court); *see also Motorola Sols., Inc. v. STA Grp. LLC*, No. IPR2023-01293, 2024 WL 1093736, at *2 (P.T.A.B. Mar. 13, 2024).

Third, the Vidal Memo. indicated that the Office expected to replace its binding agency guidance with formal rulemaking (Appx33), so the public could expect this guidance to stay in place until such time.

Fourth, Congress did not delegate to the Patent Office the authority to retroactively rescind such binding agency guidance, meaning that parties could rely on the guidance without fear that its legal landscape would later be pulled out from

under them. Specifically, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1039–40 (7th Cir. 1997) ("[W]e must . . . refrain from giving retroactive effect to agency policy guidelines."). "[W]hen Congress's delegates seek to exercise delegated legislative policymaking authority: their rules too should be presumed prospective in operation unless Congress has clearly authorized retroactive application." *De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015) (finding that executive agency did not have authority to apply rule retroactively).

Congress did not grant the Patent Office authority to make retroactive rules or guidelines, nor to retroactively rescind binding agency guidance. *Cf.* 35 U.S.C. §§ 2(b)(2), 316(a); *see also, e.g.*, *Tafas v. Dudas*, 511 F. Supp. 2d 652, 666 (E.D. Va. 2007) ("Congress did not expressly grant the PTO" "the power to promulgate retroactive rules."); William C. Neer, Comment, *Discerning the Retroactive Policymaking Powers of the United States Patent and Trademark Office*, 71 Admin. L. Rev. 413, 430–33 (2019) ("The USPTO does not have the power to make retroactive rules."). Thus, SAP was justified in relying on the Vidal Memo. because the Patent Office did not have the authority to retroactively rescind it.

Reasonably relying on this binding guidance, SAP asserted related public-use and on-sale prior art in the parallel litigation, took seven months to prepare and file its IPR petition, and expended substantial sums to prepare and file its petition, knowing it would be instituted if it met (as the Board found it did) the statutory requirements.

## 2.    SAP's Reliance Interest Was Protected by Due Process

SAP's reliance interest in the agency's binding guidance is the kind of reliance interest deemed property for due process purposes because it is a legitimate claim to entitlement, not a mere unilateral expectation. *Cf. The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The "property" interests subject to procedural due process protection include "a broad range of interests that are secured by 'existing rules or understandings.'" *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (citation omitted). Here, the Vidal Memo. secured SAP's entitlement to avoid discretionary denial based on the parallel district action as soon as SAP filed its *Sotera* stipulation. That right was a substantial one effectively guaranteeing institution of SAP's petition, which met all statutory requirements.

A state "creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), *abrogated in part on other grounds*, *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (abrogating *Olim* in the prison context). Specifically, "the use of 'explicitly mandatory language,' in

connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest." *Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). Here, the Vidal Memo. self-imposed a sizable and substantive limitation on the Patent Office's discretion to deny an IPR petition. Using mandatory language, it expressly limited the discretion to deny an IPR petition upon satisfaction of the substantive predicate of filing a *Sotera* stipulation. In practice, that restriction on discretion was absolute, leading to institution so long as the statutory criteria were met. *Cf. Sindermann*, 408 U.S. at 601–03 (finding that a state university's rules and practices may support a teacher's legitimate claim of entitlement to continued employment absent "sufficient cause," creating a property interest subject to due process protection).

SAP had this property interest whether or not it was entitled to institution of its IPR petition. Even if its petition had not met the statutory requirements for institution, SAP was entitled to not have its reasonable reliance on the binding agency guidance arbitrarily undermined by the Patent Office. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) (explaining that welfare recipients are entitled to certain procedures with regard to determining their eligibility, regardless of whether they are actually eligible).

### 3.     The Rescission of the Vidal Memo. Was Retroactive

The Patent Office has argued its rescission of the Vidal Memo. was not retroactive because "the rescission is applicable only to cases in which a final decision on institution had not yet been made" and the Board allowed supplemental briefing in view of the rescission. *Motorola Sols., Inc. v. Stellar, LLC*, No. IPR2024-01284, 2025 WL 1503220, at *2 (P.T.A.B. May 23, 2025). The Court should reject the Patent Office's position that the Vidal Memo.'s rescission was not retroactive.

Retroactivity is measured by whether a party is prejudiced for its past acts in reliance on an old rule, not whether a tribunal applies the new rule only after announcing it. The critical question is "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994). Assume a teacher on the first day of class promises students that she will give at least a B to any student who attends each class on time, but on the morning of the final exam announces that in giving final grades in a few weeks she will not follow that rule. That would be a retroactive application of the new rule to past behavior, even though the new rule was announced before it was applied. The same is true here.

Here, when SAP served its invalidity contentions asserting public-use and on-sale prior art related to the publications asserted in its IPR, it did so knowing that this posed no risk of institution denial under the Vidal Memo. The same was true

when it waited seven months to file its petition after being sued. But with the retroactive rescission of that Memo., the Board denied institution based on those past acts. That is a textbook retroactive application of a new legal landscape to past actions.

The opportunity to file a supplemental brief did not allow SAP to hit rewind on its invalidity contentions or strategic decisions made in how and when it prepared and filed its IPR petition. Nor could such briefing otherwise undo the prejudice suffered from the rescission of the binding agency guidance on which SAP had reasonably relied.

### 4.    <u>The Patent Office Violated SAP's Due Process Rights</u>

Here, the retroactive rescission of the Vidal Memo. drastically altered the legal consequences of SAP's prior conduct in the district court (asserting system prior art and serving the *Sotera* stipulation) and in the Patent Office (filing an IPR petition seven months after being sued).

"To satisfy the Due Process Clause, [an agency] must at a minimum 'provide regulated parties fair warning of the conduct a regulation prohibits or requires.'" *Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451, 462 (D.C. Cir. 2017). Such "fair warning" or "fair notice" requires that, "when an agency issues guidance, it cannot 'change the requirements set forth therein without consideration of applicants' reasonable reliance interests, proper notice to applicants, and a reasonable

opportunity for applicants to conform to the changed requirements.'" *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 918 (2025) (describing the concept of "fair notice" from a 5th Circuit decision). The Office gave SAP no such fair notice. *See also, e.g.*, *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 281–82 (D.D.C. 2021) (explaining that due process requires an agency to take into account reliance interests when changing course).

In rescinding the Vidal Memo. retroactively, the Office did not acknowledge the reliance interests of SAP and other petitioners who had filed IPR petitions relying on the Vidal Memo.'s binding guidance. (Appx81; Appx82–84.)

"In general, the ill effect of retroactivity is the frustration of the expectations of those who have justifiably relied on a prior rule." *McDonald v. Watt*, 653 F.2d 1035, 1044 (5th Cir. 1981) (holding that an agency's rule, which reversed an established agency practice on which oil and gas lease applicants relied, should be given prospective effect only). Here, SAP justifiably relied on the Vidal Memo. in choosing when to file and filing its IPR petition, and in choosing invalidity defenses to assert in the parallel district court action. The Court should order the Office to apply the rescission prospectively only, and remand for the Office to reconsider SAP's petition accordingly.[3]

---

[3]    As explained above, the Patent Office lacks authority to legislatively promulgate retroactive rules. Where agencies sometimes *do* have authority to change

### C.    Denying Institution Based on SAP Not Agreeing to Forgo System Prior Art in the District Court Action Rewrites the Estoppel Statute and Violates the Separation of Powers

The Board's mandate that SAP accept a more expansive estoppel at institution than that imposed by the estoppel statute after a final written decision violates the separation of powers because it is inconsistent with the statute.

The U.S. Constitution gives each branch of government different powers, and no branch can "encroach upon the powers confided to the others." *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1880); *see also Miller v. French*, 530 U.S. 327, 341 (2000). Congress has the "duty of making laws," the President has "the duty of executing them," and the judiciary has "the duty of interpreting and applying them." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). This separation of powers is "essential to the preservation of liberty" (*Mistretta v. United States*, 488 U.S. 361, 380 (1989)) because it "prevents the accumulation of all powers, legislative, executive, and judiciary, in the same hands" (*Patchak v. Zinke*, 583 U.S. 244, 249–50 (2018) (internal quotation marks omitted)).

---

a policy retroactively is in the context of a specific adjudication. But when an agency does so, it must consider reliance interests and balance them against the reasons for changing its policy. *See, e.g.*, *Reyes v. Garland*, 11 F.4th 985, 991–93 (9th Cir. 2021) (explaining that agency adjudicatory rules may have a retroactive effect in some circumstances, and that the permissibility of such retroactivity must be assessed by balancing reliance interests against other interests); *Mejia v. Garland*, No. 19-1468, 2024 WL 2944002, at *1 (1st Cir. June 11, 2024) (remanding a retroactive agency policy developed through adjudication for an agency to weigh the advantages and disadvantages of retroactivity).

In the America Invents Act, Congress gave the public a choice between a narrow patent challenge procedure (IPR) or a broader patent challenge procedure (post grant review ("PGR")) and limited the estoppel scope proportionately. An IPR is limited to unpatentability grounds based on printed publication prior art, while PGR permits unpatentability challenges on any ground recognized in the Patent Act, including ones based on product prior art, as well as challenges under Sections 101 and 112. 35 U.S.C. §§ 311(b), 321(b). Congress provided for estoppel provisions consistent in scope with the chosen review, namely any ground raised or that reasonably could have been raised in the IPR or PGR proceeding, respectively. 35 U.S.C. §§ 315(e), 325(e).

Upon a final written decision in an IPR, the estoppel statute bars a petitioner from raising in district court any Section 102 or 103 invalidity ground based on patents or printed publications that it reasonably could have raised in the IPR. 35 U.S.C. §§ 311(b), 315(e). "IPR estoppel applies only to a petitioner's assertions in district court that the claimed invention is invalid under 35 U.S.C. §§ 102 or 103 because it was patented or described in a printed publication (or would have been obvious only on the basis of prior art patents or printed publications)." *Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1366–67 (Fed. Cir. 2025). "IPR estoppel does not preclude a petitioner from asserting that a claimed invention was known or used by others, on sale, or in public use in district court. These are different grounds that

17

could not be raised during an IPR." *Id.* Thus, Congress spoke expressly to the impact of IPR proceedings on the available defenses in parallel or later district court litigation and provided for proportionality.

The Office, however, has effectively rewritten this estoppel statute by imposing a more expansive estoppel requirement at the institution stage than that imposed by the estoppel statute after a final written decision. Despite finding that "Petitioner's challenge is straightforward and definitely meets the standard for institution" (Appx13), the Board here nonetheless denied institution primarily because "if we were to institute review and trigger Petitioner's *Sotera* stipulation, Petitioner would remain free to pursue a system-based invalidity challenge in the district court based on essentially the same prior art that would be at issue here" (Appx14). In other words, the Board found that SAP's *Sotera* stipulation—agreeing (if the IPR were instituted) not to pursue in district court any ground it could have raised in IPR —was not enough to avoid discretionary denial. According to the Board, to clear the discretionary denial hurdle, SAP needed to also agree, upon institution, to forgo unpatentability challenges based on system art that it could not have raised in IPR. Thus, the Office effectively conditioned institution on SAP accepting a level of invalidity defense forfeiture in court at odds with Congress's statutory framework.

This inconsistency with the statute violates the constitutional separation of powers. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014). In *Utility Air*, the Supreme Court determined that an EPA rule "would deal a severe blow to the Constitution's separation of powers" because it rewrote clear statutory thresholds and was "inconsistent with" the statute's structure and design. *Id.* at 321. The Court "reaffirm[ed] the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Id.* at 328.

Similarly, here, the Board's mandate that SAP forfeit system-art-based invalidity challenges in district court is inconsistent with the estoppel statute's structure and design to limit estoppel to only those grounds the petitioner reasonably could have raised in IPR. *See also Washington v. Trump*, 768 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (When the executive branch's actions "purport to condition congressionally appropriated funds in a manner that effectively rewrites the law, they usurp Congress's legislative role and thus amount to an end run around the separation of powers."); *cf. City of Portland v. United States*, 969 F.3d 1020, 1041 (9th Cir. 2020) (finding that a regulation effectively rewrote a statute when it "depart[ed] from the carefully crafted balance" in the statute).

The Patent Office's discretion to deny a meritorious inter partes review ("IPR") petition is cabined by the Constitution. The Board's decision to deny

institution of SAP's IPR petition because SAP did not forgo an unpatentability ground that it could not have raised in the IPR violated the Constitution's separation of powers because the Board's decision was inconsistent with the statutory framework limiting estoppel to only the grounds that reasonably could have been raised in the IPR.

## VI.    **CONCLUSION**

To correct the Office's violations of the Constitution, the Court should grant the requested mandamus relief.

Respectfully submitted.

/s/ John D. Vandenberg
John D. Vandenberg
Samuel Thacker
Andrew M. Mason
Sarah E. Jelsema
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com

*Counsel for Petitioner*
*SAP America, Inc.*

June 13, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1). The body of the petition contains 4,517 words, excluding the portions exempted by rule.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

 ✓    This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman, or

___    This brief has been prepared in a monospaced typeface using with [state number of characters per inch and name of type style].

June 13, 2025                                    /s/ John D. Vandenberg
Date                                             John D. Vandenberg

                                                 *Counsel for Petitioner*
                                                 *SAP America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed this document with the United States Court of Appeals for the Federal Circuit using the CM/ECF system on June 13, 2025.

I further certify that this document was sent by Federal Express on June 13, 2025, to lead counsel for Cyandia, Inc. at the following address:

James Hannah
Herbert Smith Freehills Kramer (US) LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065

I further certify that courtesy copies of this document were sent to counsel above (James.Hannah@hsfkramer.com) and the following additional counsel of record for Cyandia, Inc., on June 13, 2025:

Jeffrey H. Price, Jeffrey.Price@hsfkramer.com
Kristopher Kastens, Kris.Kastens@hsfkramer.com
Jenna Fuller, Jenna.Fuller@hsfkramer.com
Charles Keller, Charles.Keller@hsfkramer.com

I further certify that this document was sent to efileSO@uspto.gov and also by U.S.P.S. Express Mail to the following address on June 13, 2025:

Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dated June 13, 2025.                         /s/ John D. Vandenberg
                                             John D. Vandenberg

**No. 25-____**

# United States Court of Appeals for the Federal Circuit

IN RE SAP AMERICA, INC.,
*Petitioner.*

On Petition for Writ of Mandamus to the
United States Patent and Trademark Office in No. IPR2024-01496

## APPENDIX TO SAP AMERICA, INC'S
## <u>PETITION FOR WRIT OF MANDAMUS</u>

John D. Vandenberg
Samuel Thacker
Andrew M. Mason
Sarah E. Jelsema
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com

*Counsel for Petitioner*
*SAP America, Inc.*

# TABLE OF CONTENTS

| PTAB Paper or Ex. No. | Description | Appx No. |
|---|---|---|
| Paper 17 | Order Denying Director Review, May 29, 2025. | Appx001–003 |
| Paper 13 | Decision Denying Institution of *Inter Partes* Review, April 7, 2025. | Appx004–015 |
| N/A | PTAB Parallel Litigation Study: Executive Summary, available at https://www.uspto.gov/sites/default/files/documents/ptab_parallel_litigation_study_exec_summ_20220621_.pdf. June 2022. | Appx016–024 |
| N/A | Memorandum from Katherine K. Vidal to Members of the Patent Trial and Appeal Board, "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation," available at: https://web.archive.org/web/20250203023353/https:/www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf. Published June 21, 2022, as captured by The Wayback Machine on February 3, 2025. | Appx025–033 |
| N/A | Press Release: "Director Vidal Provides Clarity to Patent Trial and Appeal Board Practice on Discretionary Denials of Patent Challenges Based on Parallel Litigation," available at https://www.uspto.gov/about-us/news-updates/director-vidal-provides-clarity-patent-trial-and-appeal-board-practice. June 22, 2022. | Appx034–036 |

| PTAB Paper or Ex. No. | Description | Appx No. |
|---|---|---|
| N/A | PowerPoint, "Patent Trial and Appeal Board Boardside Chat: Discretionary Denials in AIA Post-Grant Proceedings with Parallel Litigation," available at https://www.uspto.gov/sites/default/files/documents/PTABBoardsideChatDiscretionaryDenialsJuly2022.pdf. July 7, 2022. | Appx037–079 |
| Ex. 1045 | Sotera Stipulation. January 14, 2025. | Appx080 |
| N/A | Website Notice: "USPTO Rescinds Memorandum Addressing Discretionary Denial Procedures," available at https://web.archive.org/web/20250305132751/https://www.uspto.gov/about-us/news-updates/uspto-rescinds-memorandum-addressing-discretionary-denial-procedures. Published February 28, 2025, as captured by The Wayback Machine on March 5, 2025. | Appx081 |
| N/A | Memorandum from Scott Boalick, "Guidance on USPTO's recission of Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" available at https://www.uspto.gov/sites/default/files/documents/guidance_memo_on_interim_procedure_recission_20250324.pdf. March 24, 2025. | Appx082–084 |
| Paper 14 | Petitioner's Request for Director Review, April 17, 2025. | Appx085–102 |
| N/A | Docket of IPR2024-01495. | Appx103–106 |

Director_PTABDecision_Review@uspto.gov                    Paper 17
571.272.7822                                    Date: May 29, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE OFFICE OF THE UNDER SECRETARY OF COMMERCE
FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

SAP AMERICA, INC.,
Petitioner,

v.

CYANDIA, INC.,
Patent Owner.

———————————

IPR2024-01432 (Patent 8,751,948 B2)
IPR2024-01495 (Patent 8,578,285 B2)
IPR2024-01496 (Patent 8,595,641 B2)[1]

———————————

Before COKE MORGAN STEWART, *Acting Under Secretary of
Commerce for Intellectual Property and Acting Director of the United States
Patent and Trademark Office.*

ORDER

---

[1] This order applies to each of the above-listed proceedings.

IPR2024-01432 (Patent 8,751,948 B2)
IPR2024-01495 (Patent 8,578,285 B2)
IPR2024-01496 (Patent 8,595,641 B2)

The Office received a request for Director Review of the Decision denying institution in each of the above-captioned cases and an authorized response to each request. *See* Papers 15, 16.[2]  The requests and responses were referred to me.

Upon consideration of the requests, it is:

ORDERED that the requests for Director Review are denied.

---

[2] Citations are to the record in IPR2024-01432.  Similar papers were filed in IPR2024-01495 and IPR2024-01496.

IPR2024-01432 (Patent 8,751,948 B2)
IPR2024-01495 (Patent 8,578,285 B2)
IPR2024-01496 (Patent 8,595,641 B2)

FOR PETITIONER:

Roy Chamcharas
Andrew Mason
Todd Siegel
Samuel Thacker
KLARQUIST SPARKMAN, LLP
roy.chamcharas@klarquist.com
andrew.mason@klarquist.com
todd.siegel@klarquist.com
samuel.thacker@klarquist.com


FOR PATENT OWNER:

James Hannah
Jeffrey Price
Kristopher Kastens
Jenna Fuller
KRAMER LEVIN NAFTALIS & FRANKEL LLP
jhannah@kramerlevin.com
jprice@kramerlevin.com
kkastens@kramerlevin.com
jfuller@kramerlevin.com

Trials@uspto.gov                                                    Paper 13
Tel: 571-272-7822                                      Date:  April 7, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

SAP AMERICA, INC.,
Petitioner,

v.

CYANDIA, INC.,
Patent Owner.

———————————

IPR2024-01496
Patent 8,595,641 B2

———————————

Before JEFFREY S. SMITH, MITCHELL G. WEATHERLY, and
JASON W. MELVIN, *Administrative Patent Judges.*

WEATHERLY, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

# I. INTRODUCTION

## A. Background

SAP America, Inc. ("Petitioner") filed a petition (Paper 1, "Pet.") to institute an *inter partes* review of claims 1–11, 13, 16, 18, and 31–34 (the "challenged claims") of U.S. Patent No. 8,595,641 B2 (Ex. 1001, "the '641 patent").  35 U.S.C. § 311.  Cyandia, Inc. ("Patent Owner") timely filed

IPR2024-01496
Patent 8,595,641 B2

a Preliminary Response.  Paper 6 ("Prelim. Resp.").  With our prior authorization, Petitioner and Patent Owner collectively filed four additional briefs including: Petitioner's Reply to the Patent Owner Preliminary Response (Paper 7, "Reply"); Patent Owner's Preliminary Surreply (Paper 8, "Surreply"); Petitioner's Supplemental Brief Regarding *Fintiv* (Paper 9, "Pet. Fintiv"); and Patent Owner's Supplemental *Fintiv* Briefing (Paper 10, "PO Fintiv").

Institution of an *inter partes* review is authorized by statute when "the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a).

Petitioner argues that the challenged claims are unpatentable as obvious under 35 U.S.C. § 103 in view of the combined teachings of WebSphere-Portal,[1] Ben-Natan,[2] and WebSphere-Everyplace.[3]

---

[1] Juan R. Rodriguez, et al., IBM RATIONAL APPLICATION DEVELOPER V6 PORTLET APPLICATION DEVELOPMENT AND PORTAL TOOLS, August 2005 (Ex. 1004, "WebSphere-Portal").

[2] Ron Ben-Natan, et al., MASTERING IBM® WEBSPHERE® PORTAL, EXPERT GUIDANCE TO BUILD AND DEPLOY PORTAL APPLICATIONS, 2004 (Ex. 1005, "Ben-Natan").

[3] WebSphere-Everyplace refers to a four-volume set of materials including:

- Juan Rodriguez, et al., IBM WEBSPHERE EVERYPLACE ACCESS V5 HANDBOOK FOR DEVELOPERS AND ADMINISTRATORS, VOLUME I: INSTALLATION AND ADMINISTRATION, May 2005 (Ex. 1006);

- Juan R. Rodriguez, et al., IBM WEBSPHERE EVERYPLACE ACCESS V5 HANDBOOK FOR DEVELOPERS AND ADMINISTRATORS, VOLUME II: APPLICATION DEVELOPMENT, March 2005 (Ex. 1007);

IPR2024-01496
Patent 8,595,641 B2

For the reasons explained below, we exercise our discretion to deny the Petition under 35 U.S.C. § 314(a).

B. Related Proceedings

Petitioner identified as a related proceeding the co-pending district court proceeding of *Cyandia, Inc. v. SAP America, Inc. et al*, Case No. 2-24-cv-00096 (E.D. Tex.), filed February 12, 2024 (the "Litigation").  Pet. x; Paper 4, 1.  Patent Owner also identifies as being related the proceeding in which Petitioner filed petitions challenging claims in the following related patents: U.S. Patent No. 8,578,285 (IPR2024-01495) and U.S. Patent No. 8,751,948 (IPR2024-01432 and IPR2024-01433).  Paper 4, 1.

## II. DISCRETIONARY DENIAL UNDER § 314(A)

Patent Owner asserts that the Board should exercise its discretion to deny the Petition.  Prelim. Resp. 7; PO Fintiv.  We have discretion to deny institution of an *inter partes* review under the provisions of 35 U.S.C. § 314(a) (authorizing institution of an *inter partes* review under particular circumstances, but not requiring institution under any circumstances).  *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion."); *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1356 (2018) ("[Section] 314(a) invests the Director with discretion on the question whether to institute review . . . ." (emphasis omitted)); *Harmonic Inc. v. Avid*

---

- Juan R. Rodriguez, et al., IBM WEBSPHERE EVERYPLACE ACCESS V5 HANDBOOK FOR DEVELOPERS AND ADMINISTRATORS, VOLUME III: E-MAIL AND DATABASE SYNCHRONIZATION, April 2005 (Ex. 1008); and

- Juan Rodriguez, et al., IBM WEBSPHERE EVERYPLACE ACCESS V5 HANDBOOK FOR DEVELOPERS AND ADMINISTRATORS, VOLUME IV: ADVANCED TOPICS, March 2005 (Ex. 1009).

IPR2024-01496
Patent 8,595,641 B2

*Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding.").

In *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) ("*Fintiv*"), the Board articulated a list of factors ("Fintiv Factors") that we consider in determining whether to discretionarily deny institution based on an advanced stage of a parallel proceeding:

> 1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;
>
> 2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;
>
> 3. investment in the parallel proceeding by the court and the parties;
>
> 4. overlap between issues raised in the petition and in the parallel proceeding;
>
> 5. whether the petitioner and the defendant in the parallel proceeding are the same party; and
>
> 6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Fintiv*, Paper 11, 5–6. "These factors relate to whether efficiency, fairness, and the merits support the exercise of authority to deny institution in view of an earlier trial date in the parallel proceeding." *Id.* In evaluating these factors, we take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Id.* (citing Patent Trial and Appeal Board Consolidated Trial Practice Guide ("CTPG") at 55 (November 2019)).[4]

---

[4] Available at https://www.uspto.gov/TrialPracticeGuideConsolidated.

IPR2024-01496
Patent 8,595,641 B2

Petitioner contends that the parallel district-court proceeding does not justify discretionary denial.  Pet. 3; Pet. Fintiv.  In particular, Petitioner asserts that Fintiv Factors 3, 4 and 6 weigh against discretionary denial and Fintiv Factor 1 is neutral.  Pet. Fintiv 1.  Patent Owner disagrees and contends that Fintiv Factors 2–6 weigh in favor of discretionary denial.  PO Fintiv 1–2.  In our analysis below, we address each Fintiv Factor in turn.

A. Fintiv Factor 1: Existence or Likelihood of a Stay

Neither party has moved for a stay in the Litigation.  Pet. Fintiv 1; Prelim. Resp. 7–8.  Petitioner contends that it will move for a stay if we institute an *inter partes* review.  Pet. Fintiv 1.  Patent Owner contends that Judge Gilstrap "frequently denies stays" in patent cases involving parallel inter partes review proceedings.  Prelim. Resp. 7–8.  We will not speculate on the likelihood of whether a stay will be entered in the Litigation and find that Fintiv Factor 1 is neutral.

B. Fintiv Factor 2: Trial Date

Trial is set to begin in the Litigation on October 6, 2025, about six months before the deadline for entering a final written decision in this proceeding.  Pet. Fintiv 1; Prelim. Resp. 8.  Patent Owner contends that the median time to trial in the Eastern District of Texas is 21.9 months, which implies that trial would begin on December 12, 2025, about four months before the deadline for entering a final written decision in this proceeding.  Prelim. Resp. 8.  Under these circumstances, Patent Owner argues that Fintiv Factor 2 weighs "moderately to strongly in favor" of discretionarily denying institution.  PO Fintiv. 1.

Petitioner contends that Fintiv Factor 2 "only slightly favors denial" because the October trial date is "uncertain due to the pending transfer

5

IPR2024-01496
Patent 8,595,641 B2

motion and cross-motion."[5]  Pet. Fintiv 1; *see also* Pet. 3 (indicating that
Petitioner's motion to transfer and Patent Owner's cross-motion to transfer
are pending in the Litigation).  On March 28, 2025, and with our
authorization, Patent Owner filed the district court's order denying both
motions to transfer.  Ex. 2009.

When, as here, the trial date is set to be earlier than the projected
deadline for entering a final written decision, "the Board generally has
weighed this fact in favor of exercising authority to deny institution."
*Fintiv*, at 9.  Because the trial date is set and the uncertainty in that date has
diminished considerably due to the district court's denial of both motions to
transfer the Litigation to a different venue, we find that Fintiv Factor 2
weighs in favor of discretionarily denying institution.

C. Fintiv Factor 3: Investment in District Court

The parties disagree about how we should weigh the evidence related
to Fintiv Factor 3.  In the Litigation, a *Markman* hearing is set for April 24,
2025,[6] about two weeks after our decision on institution.  Ex. 3001, 9.  To
date, the district court has not issued any substantive orders, held hearings,
or otherwise invested resources on invalidity issues.  Pet. Fintiv 1–2.  Initial
expert reports are due May 12, 2025, and expert discovery closes June 23,
2025.  *Id*. at 2.  Petitioner filed the Petition about four months after it

---

[5] Petitioner moved to change the venue of the Litigation to the Northern
District of California, and Patent Owner has cross-moved to change the
venue of the Litigation to the District of Delaware.  Ex. 3001, 2, 5.

[6] The original date of the *Markman* hearing was April 2, 2025, but the
hearing was continued to April 24, 2025, on March 25, 2025.  Ex. 3001, 9.

IPR2024-01496
Patent 8,595,641 B2

received infringement contentions in the Litigation.  Pet. Fintiv 2 (citing Ex. 2006, 4); PO Fintiv 2.

On these facts, Petitioner argues that Fintiv Factor 3 weighs against discretionary denial.  Pet. Fintiv 1–2.  Patent Owner argues that Fintiv Factor 3 weighs in favor of discretionary denial or is "at least neutral" because "the parties have expended significant fact discovery, and the *Markman* hearing will be held before institution."  PO Fintiv 2.  Patent Owner also argues that the four-month time between its service of infringement contentions and the filing of the Petition constitutes "substantial delay" that favors discretionary denial under Fintiv Factor 3.  *Id*. (citing *AT&T Servs. v. ASUS Tech.*, IPR2024-00992, Paper 14 at 12 (P.T.A.B. Dec. 16, 2024) (five months between infringement contentions and the petition is a "substantial delay")).

"If, at the time of the institution decision, the district court has not issued orders related to the patent at issue in the petition, this fact weighs against exercising discretion to deny institution." *Fintiv*, 10.  The district court has not issued substantive orders related to the '641 patent, and the district court has continued the *Markman* hearing to a date two weeks after the deadline for our institution decision.  On March 26, 2025, in its order denying the parties' motions to change venue and when commenting upon the effect of a transfer on judicial economy, the district court remarked that "this case is still in its early stages" and found that factors of judicial economy as it related to transfer were "neutral."  Ex. 2009, 9.  Under these circumstances, we find that Fintiv Factor 3 weighs against discretionarily denying institution.

IPR2024-01496
Patent 8,595,641 B2

D. Fintiv Factor 4: Overlap with Issues Raised in District Court

Petitioner has stipulated that "should IPR be instituted in IPR2024-01432, 2024-01433, 2024-01495, or 2024-01496, SAP will not pursue in the [Litigation] any ground of unpatentability that is raised or reasonably could have been raised in any instituted IPR." Ex. 1045. We consider such a stipulation to be substantively the same as the one entered in *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 13 (PTAB Dec. 1, 2020) (precedential as to § II.A). The *Sotera* decision found that the presence of such a stipulation "ensures that an *inter partes* review is a 'true alternative' to the district court proceeding" and therefore "weighs strongly" against discretionarily denying institution. *Sotera*, 19. Petitioner also contends, without being specific, that "most of the challenged claims will be dropped from the district court." Pet. Fintiv 2; *see also* Ex. 3001, 7 (Order Focusing Asserted Claims and Prior Art References to Reduce Costs). Patent Owner argues that Petitioner's *Sotera* stipulation will have limited effect in reducing the overlap of patentability issues being addressed in both fora because "Petitioner intends to rely on the WebSphere system described in the Petition's cited art." PO Fintiv 2 (citing Ex. 2007 ¶¶ 2–3). Neither party provides specific details on the degree to which Petitioner's obviousness challenge here is duplicated in Petitioner's invalidity contentions in the Litigation or whether other invalidity defenses are also raised in the Litigation.

Although Petitioner has filed a *Sotera* stipulation, we agree with Patent Owner that the stipulation has limited practical effect in reducing the overlapping efforts here and in the Litigation. Petitioner contends in the district court that the system described in the WebSphere materials renders

8

IPR2024-01496
Patent 8,595,641 B2

at least some of the challenged claims invalid. Because Petitioner cannot challenge claims in this proceeding based on a public use or sale of the WebSphere system, Petitioner's *Sotera* stipulation would not prevent Petitioner from asserting an invalidity defense in the district court based on the public use or sale of the WebSphere system. We understand that, in the Litigation, Petitioner has relied upon the WebSphere publications as prior art, presumably as evidence describing the WebSphere system that was publicly used and on sale.

Regardless of any decision rendered in this proceeding on the patentability of the challenged claims based on the WebSphere printed publications, Petitioner may continue to press an invalidity defense based on the same evidence presented here. Additionally, it appears that all claims being contested as invalid in the Litigation are also subject to a challenge in the Petition. The narrowing of asserted claims in the Litigation, if it occurs, will streamline the parties' overall dispute on invalidity if we decide to discretionarily deny institution. So, a majority of the parties' work that would be done here will also be required in the Litigation regardless of whether we institute review. Accordingly, we do not consider the presence of the *Sotera* stipulation in our case to ensure that *inter partes* review would be a "true alternative" to the Litigation. On balance, we find that Fintiv Factor 4 weighs in favor of discretionarily denying institution.

E. Fintiv Factor 5: Whether Petitioner Is Defendant in District Court

The fact that Petitioner is also the defendant in the Litigation weighs in favor of discretionarily denying institution.

F. Fintiv Factor 6: Other Circumstances Including Merits

Under *Fintiv*, "if the merits of a ground raised in the petition seem particularly strong on the preliminary record, this fact has favored institution." *Fintiv*, 14–15. *Fintiv* further instructs us that: "In such cases, the institution of a trial may serve the interest of overall system efficiency and integrity because it allows the proceeding to continue in the event that the parallel proceeding settles or fails to resolve the patentability question presented in the PTAB proceeding." *Id*. at 15.

Petitioner argues that its arguments that the challenged claims are unpatentable are "compelling" because Patent Owner is "relying on strained claim constructions that contradict its infringement contentions and raising apparent anticipation arguments (that a single prior art embodiment allegedly does not disclose every claim element) without squarely addressing obviousness." Pet. Fintiv 2 (citing Prelim. Resp. 15–38, Surreply 2–9). Essentially, Petitioner contends that its obviousness challenge turns on claim interpretation. We agree with Petitioner that currently Patent Owner's arguments read like an opposition to an anticipation challenge. Of course, Patent Owner would be free to proffer additional arguments in opposition to the obviousness challenge during a trial, so a trial may present issues that are currently not disputed.

We decline to characterize the merits as sufficiently strong to overcome the other factors. That is not to say we view Petitioner's case as marginal or close. Rather we determine that the other factors are more persuasive here. Although Petitioner's challenge is straightforward and definitely meets the standard for institution, even when balanced against Patent Owner's counterarguments, we do not find the challenge to be

IPR2024-01496
Patent 8,595,641 B2

sufficiently strong to outweigh the evidence discussed above in connection with Fintiv Factors 1–5.  When reviewing all other circumstances, we find that Fintiv Factor 6 is neutral.

G. Conclusion

Fintiv Factor 3 is the only factor that weighs against a discretionary denial under § 314(a).  Fintiv Factors 1 and 6 are neutral, and Fintiv Factors 2, 4, and 5 weigh in favor of a discretionary denial.  We find particularly significant that, if we were to institute review and trigger Petitioner's *Sotera* stipulation, Petitioner would remain free to pursue a system-based invalidity challenge in the district court based on essentially the same prior art that would be at issue here.  On balance, we find that a holistic weighing of all six Fintiv Factors warrants our exercise of discretion under § 314(a) to deny institution of review so that the entire dispute between the parties may be resolved in the Litigation.

## III. ORDER

For the reasons given, it is:

ORDERED that *inter partes* review of claims 1–11, 13, 16, 18, and 31–34 of U.S. Patent No. 8,595,641 B2 is *not instituted*.

IPR2024-01496
Patent 8,595,641 B2

PETITIONER:

Roy Chamcharas
Andrew M. Mason
Todd M. Siegel
Samuel B. Thacker
KLARQUIST SPARKMAN, LLP
roy.chamcharas@klarquist.com
andrew.mason@klarquist.com
todd.siegel@klarquist.com
samuel.thacker@klarquist.com


PATENT OWNER:

James Hannah
Jeffrey H. Price
Kristopher Kastens
Jenna Fuller
Charles Keller (pro hac vice forthcoming)
KRAMER LEVIN NAFTALIS & FRANKEL, LLP
jhannah@kramerlevin.com
jprice@kramerlevin.com
kkastens@kramerlevin.com
jfuller@kramerlevin.com
ckeller@kramerlevin.com

# PTAB Parallel Litigation Study

**Executive Summary**

June 2022



UNITED STATES
PATENT AND TRADEMARK OFFICE

# Background

In 2019, the U.S. Patent and Trademark Office (USPTO) first denied institution of an America Invents Act (AIA) proceeding after taking into account that the same issues were raised in a parallel district court litigation that was set to go to trial before the Patent Trial and Appeal Board (PTAB) would reach a final written decision.[1] Since then, the PTAB developed and has applied the six factors set forth in the precedential *Fintiv* decision to decide whether to use the Director's discretion to deny institution when there is a likelihood of duplicative litigation.[2] Denials of institution based on the *NHK* precedent and the later *Fintiv* factors are referred to collectively as "*Fintiv* denials." The USPTO also issued informative and precedential decisions providing guidance on the use of petitioner stipulations to avoid overlap between proceedings before the PTAB and issues presented in a parallel litigation.[3] The timeline in Figure 1 depicts the timing of these key PTAB decisions.

**FIGURE 1**



| Fiscal year 2019 | Fiscal year 2020 | Fiscal year 2021 |
|---|---|---|

5/7/19
**NHK**
designated
precedential

5/5/20
**Fintiv**
designated
precedential

7/13/20
**Sand Revolution**
designated
informative

12/17/20
**Sotera Wireless**
designated
precedential

# Intent of Study

The USPTO conducted the PTAB Parallel Litigation Study to better understand trends and to provide an authoritative source of data in *Fintiv* denials. The study also helps the USPTO make data-based decisions as it moves forward with formalizing the discretionary denial process. The USPTO provides detailed slides with the complete results of the data study on the PTAB statistics page (www.uspto.gov/patents/ptab/statistics). What follows is a summary of key takeaways from the study results.

---

1  The USPTO designated *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.* as precedential in May 2019 (www.uspto.gov/patents/ptab/precedential-informative-decisions). This decision also based the denial of institution on Director discretion under 35 U.S.C. § 325(d) because the same or substantially the same prior art or arguments previously were presented to the Office.

2  The USPTO designated *Apple Inc. v. Fintiv, Inc.* as precedential in May 2020.

3  The USPTO issued two important decisions addressing different types of stipulations, i.e., *Sand Revolution II, LLC v. Continental Intermodal Group – Trucking LLC* in July 2020 (designated informative and addressing a stipulation regarding "same grounds") and *Sotera Wireless, Inc. v. Masimo Corp.* in December 2020 (designated precedential and addressing a broader stipulation regarding grounds "raised or reasonably could have raised").

# Study Results

## Frequency

The study covered the time period from the first PTAB precedential decision in *NHK* through the end of the first quarter of fiscal year 2022. The study first examined how often *Fintiv* was raised in AIA proceedings. Figure 2 shows, over time, **the number of cases (bars)** and **percent of cases (line) in which NHK/Fintiv was discussed in a decision on institution or a patent owner raised it as an argument for denial of institution.** The study reveals that after *Fintiv* was designated precedential, parallel litigation was raised in about 40% of all cases.

**FIGURE 2**

### *NHK/Fintiv* Issue Frequency



## Outcomes

The study next examined outcomes in cases where the decision on institution analyzed a *Fintiv* argument. Figure 3 shows, over time, the number of cases where the PTAB denied institution (orange bars) based on *Fintiv* and where the PTAB instituted trial (blue bars) despite a *Fintiv* argument seeking denial. The study reveals that *Fintiv* denials peaked in the second quarter of fiscal year 2021 and dropped significantly afterwards.

**FIGURE 3**

## *NHK/Fintiv* Outcomes



Starting in the third quarter of fiscal year 2021, *Fintiv* denials dropped significantly.

## By District

The study also looked specifically at *Fintiv* denials based on parallel litigations in various district courts, including the Western District of Texas. Figure 4 shows, by fiscal year, the number of cases where the PTAB denied institution (orange bars) based on parallel district court litigation in either the Eastern or the Western Districts of Texas and where the PTAB instituted trial (blue bars) despite a *Fintiv* argument seeking denial in these districts. Although the Western District of Texas sets speedy trial dates, the number of *Fintiv* denials involving parallel litigation in this district has plummeted. In the time period covered by this study, the PTAB had issued no *Fintiv* denials based on parallel litigation in the Western District of Texas since August 2021.[4]



**FIGURE 4**

### *NHK/Fintiv* Outcomes by District

---

4  Some discretionary denials in WDTX may have issued since the close of this study.

## Stipulations

The study also examined the role of stipulations in cases addressing requests for *Fintiv* denials. The USPTO issued two PTAB decisions[5] to guide the public on using stipulations to avoid overlapping issues at the PTAB and in the district court. Figure 5 shows, over time, the number of cases where a petitioner filed a stipulation, with the orange bars showing when the PTAB denied institution despite a stipulation and the blue bars showing when the PTAB instituted trial in cases with a stipulation. The study reveals that the USPTO's guidance on using stipulations appears to have led to an increase in stipulation filings and a significant decrease in *Fintiv* denials.



FIGURE 5

## *NHK/Fintiv* Outcomes with Stipulations

Thus, the overall downward trend in *Fintiv* denials likely is due in large part to the availability of additional USPTO guidance and petitioners adapting to that guidance in their filings.

---

5  See note 3 above.

# *Fintiv* Denials and Drug Patents

Since *Fintiv*'s designation in May 2020, the PTAB has issued 51 decisions on institution (DIs) for petitions challenging drug patents (as of March 2022).[6] Figure 6 shows a pie chart of the outcomes in these DIs. The PTAB has denied institution of *three total* AIA petitions challenging two Orange Book-listed or biologic drug patents based on *Fintiv*.[7]



**FIGURE 6**

## Outcomes in Drug Patent Institutions

- Denied for insufficiency: 1
- Denied based on Fintiv: 3
- Denied based on same art/arguments: 12
- Instituted: 25
- Merits Denial: 10

Of those 51 decisions on institution:

- 25 drug-patent petitions were instituted (excluding eight joinder petitions).

- 10 drug-patent petitions were denied on the merits (i.e., the petition did not present grounds that met the threshold for institution).

- 12 drug-patent petitions were denied because the petition was based on the same or substantially the same prior art or arguments previously presented to the USPTO.

- 1 drug-patent petition was denied because an insufficient number of challenges met the institution standard.

- **3 drug-patent petitions** (1 petition challenging an Orange Book-listed patent and 2 petitions challenging a single biologic patent) **were denied based on** *Fintiv*.[5]

---

6  "Drug patents" refers to Orange Book-listed patents and biologic patents of the type considered in the USPTO study on AIA trials involving petitions challenging such patents, available at www.uspto.gov/sites/default/files/documents/PTABOBbiologicpatentstudy8.10.2021draftupdatedthru-June2021.pdf.

7  This number includes two biologic drug patent petitions initially denied based on *Fintiv* but later instituted on rehearing.

# Summary

The PTAB Parallel Litigation Study reveals a sharp decline overall in *Fintiv* denials and only three instances of *Fintiv* as a basis for denial of the studied drug patents. The decline in overall *Fintiv* denials can be attributed to petitioners adapting their behavior in response to USPTO guidance, such as using stipulations to avoid overlap in issues before both the PTAB and another tribunal. The significant decline in *Fintiv* denials demonstrates that petitioners have tools to ensure the PTAB hears petitions that meet the threshold for institution.



United States Patent and Trademark Office

www.uspto.gov

 USPTO.gov    @uspto    USPTOvideo    @uspto    USPTO



**UNITED STATES PATENT AND TRADEMARK OFFICE**

<small>UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE</small>

**MEMORANDUM**

DATE:      June 21, 2022

TO:         Members of the Patent Trial and Appeal Board

FROM:      Katherine K. Vidal *Katherine Kelly Vidal*
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office (USPTO or the Office)

SUBJECT:  INTERIM PROCEDURE FOR DISCRETIONARY DENIALS IN AIA POST-
GRANT PROCEEDINGS WITH PARALLEL DISTRICT COURT
LITIGATION

Introduction

Congress designed the America Invents Act (AIA) post-grant proceedings "to establish a

more efficient and streamlined patent system that will improve patent quality and limit

unnecessary and counterproductive litigation costs." H.R. Rep. No. 112–98, pt. 1, at 40 (2011),

2011 U.S.C.C.A.N. 67, 69; *see* S. Rep. No. 110–259, at 20 (2008).  Parallel district court and

AIA proceedings involving the same parties and invalidity challenges can increase, rather than

limit, litigation costs.  Based on the USPTO's experience with administering the AIA, the agency

has recognized the potential for inefficiency and gamesmanship in AIA proceedings, given the

existence of parallel proceedings between the Office and district courts.  To minimize potential

conflict between the Patent Trial and Appeal Board (PTAB) and district court proceedings, the

Office designated as precedential *Apple Inc. v. Fintiv, Inc.*[1]  This precedential decision articulates

---

[1] *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated
precedential May 5, 2020).

<small>P.O. Box 1450, Alexandria, Virginia 22313-1450 – WWW.USPTO.GOV</small>

the following set of nonexclusive factors (the *Fintiv* factors) that the PTAB considers on a case-specific basis in determining whether to institute an AIA post-grant proceeding where there is parallel district court litigation:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;
2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;
3. investment in the parallel proceeding by the court and the parties;
4. overlap between issues raised in the petition and in the parallel proceeding;
5. whether the petitioner and the defendant in the parallel proceeding are the same party; and
6. other circumstances that impact the Board's exercise of discretion, including the merits.

The Office issued a Request for Comments (RFC)[2] on the PTAB's current approaches to exercising discretion on whether to institute an AIA proceeding, including situations involving parallel district court litigation. The Office received 822 comments from a wide range of stakeholders. In light of the feedback received, the Office is planning to soon explore potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking. In the meantime, I have determined that several clarifications need to be made to the PTAB's current application of *Fintiv* to discretionary institution where there is parallel litigation.

As explained below, to benefit the patent system and the public good, the PTAB will not rely on the *Fintiv* factors to discretionarily deny institution in view of parallel district court litigation where a petition presents compelling evidence of unpatentability. This memorandum also confirms that the precedential import of *Fintiv* is limited to facts of that case. Namely, *Fintiv* involved institution of an AIA proceeding with a parallel district court litigation. The

---

[2] Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 FR 66502 (Oct. 20, 2020); Discretion to Institute Trials Before the Patent Trial and Appeal Board; Extension of Comment Period, 85 FR 73437 (Nov. 18, 2020).

plain language of the *Fintiv* factors is directed to district court litigation and does not apply to parallel U.S. International Trade Commission (ITC) proceedings, as the ITC lacks authority to invalidate a patent and the ITC's invalidity rulings are not binding on the Office or on district courts.

Consistent with *Sotera Wireless, Inc.,*[3] the PTAB will not discretionarily deny institution in view of parallel district court litigation where a petitioner presents a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the PTAB. Additionally, when considering the proximity of the district court's trial date to the date when the PTAB final written decision will be due, the PTAB will consider the median time from filing to disposition of the civil trial for the district in which the parallel litigation resides.[4] This memorandum clarifies those practices.

This memorandum is issued under the Director's authority to issue binding agency guidance to govern the PTAB's implementation of various statutory provisions, including directions regarding how those statutory provisions will apply to sample fact patterns. *See, e.g.*, 35 U.S.C. 3(a)(2)(A); PTAB Standard Operating Procedure (SOP) 2 at 1–2.

Analysis

**Compelling Merits**

In the AIA, Congress established post-grant proceedings, including IPR, PGR, and covered business method (CBM) proceedings to improve and ensure patent quality by providing "quick and cost-effective alternatives to litigation" for challenging issued patents. H.R. Rep. No. 112–98, pt. 1, at 48; *see also* S. Rep. No. 110–259, at 20 (explaining that the "post-grant review

---

[3] *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A).
[4] https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-uanageuent-statistics

system . . . will give third parties a quick, inexpensive, and reliable alternative to district court litigation to resolve questions of patent validity"). Congress granted the Office "significant power to revisit and revise earlier patent grants" as a mechanism "to improve patent quality and restore confidence in the presumption of validity that comes with issued patents." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016) (quoting H.R. Rep. No. 112-98, pt. 1, at 45, 48). Given those objectives, compelling, meritorious challenges will be allowed to proceed at the PTAB even where district court litigation is proceeding in parallel. Compelling, meritorious challenges are those in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence. That said, the PTAB retains discretion to deny institution for proceedings where abuse has been demonstrated.

*Fintiv* factor six reflects that the PTAB considers the merits of a petitioner's challenge when determining whether to institute a post-grant proceeding in view of parallel district court litigation. Where the information presented at the institution stage is merely sufficient to meet the statutory institution threshold,[5] the PTAB has the authority, where warranted, to exercise discretion to deny institution in view of the other *Fintiv* factors. In contrast, where the PTAB determines that the information presented at the institution stage presents a compelling

---

[5] Institution of an IPR is authorized by statute only when "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a) (2018). Similarly, institution of a PGR, including a CBM, is authorized only when "the information presented in the petition . . . , if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable" *Id.* § 324(a).

unpatentability challenge, that determination alone demonstrates that the PTAB should not

discretionarily deny institution under *Fintiv*.[6]

This clarification strikes a balance among the competing concerns of avoiding potentially

conflicting outcomes, avoiding overburdening patent owners, and strengthening the patent

system by eliminating patents that are not robust and reliable. Consistent with Congress's giving

the Office the authority to revisit issued patents, the PTAB will not deny institution based on

*Fintiv* if there is compelling evidence of unpatentability. This approach "allows the proceeding

to continue in the event that the parallel proceeding settles or fails to resolve the patentability

question presented in the PTAB proceeding." *Fintiv*, Paper 11 at 15. The patent system and the

public good benefit from instituting compelling unpatentability challenges.


**ITC and *Fintiv***

In 2018, the PTAB issued a decision in *NHK Spring*.[7] There, the PTAB held that the

advanced state of a parallel district court litigation involving similar validity disputes could be a

factor weighing in favor of denying institution of an IPR because of concerns over the inefficient

---

[6] The compelling evidence test affirms the PTAB's current approach of declining to deny institution under *Fintiv* where the evidence of record so far in the case would plainly lead to a conclusion that one or more claims are unpatentable. *See, e.g.*, *Illumina Inc. v. Trs. of Columbia Univ.*, IPR2020-00988, Paper 20 (PTAB Dec. 8, 2020) (declining to deny under *Fintiv* in light of strong evidence on the merits even though four factors weighed in favor of denial and remaining factor was neutral); *Synthego Corp. v. Agilent Techs., Inc.*, IPR2022-00402, Paper 11 (May 31, 2022) (granting institution as efficiency and integrity of the system would not be served by denying institution of petition with particularly strong evidence on the merits); *Samsung Elecs. Co. v. Scramoge Tech., Ltd.*, IPR2022-00241, Paper 10 (June 13, 2022) (*Fintiv* analysis concludes that "very strong" evidence on the merits outweigh concurrent litigation involving earlier scheduled trial date and significant overlap in proceedings).

[7] *NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) (precedential). This decision also based the denial of institution on Director discretion under 35 U.S.C. § 325(d).

use of PTAB's resources. *NHK Spring*, Paper 8 at 19–20. Later, in 2020, the PTAB announced

the *Fintiv* factors, which the PTAB considers when a patent owner raises an argument for

discretionary denial under *NHK Spring* due to an earlier trial date. *Fintiv*, Paper 11 at 5–6. The

*Fintiv* factors focus on the interplay between IPRs and district court litigation. Through that

focus, the *Fintiv* factors seek to avoid duplicative efforts between the PTAB and federal district

courts. For example, *Fintiv* factor one asks whether the "court" has granted a stay or if one may

be granted. Similarly, *Fintiv* factor two looks at the proximity of the "court" trial date.

Likewise, *Fintiv* factor three concerns the amount of investment in the parallel proceeding by the

"court" and the parties. *Fintiv* factors five and six refer to the same parallel proceeding

described in factor three.

Although the *Fintiv* factors are directed to district court litigation and not ITC

proceedings,[8] the PTAB has, in the past, denied AIA reviews based on parallel ITC

investigations.[9] Important differences, however, distinguish ITC investigations from patent

invalidity trials in federal district courts. Unlike district courts, the ITC lacks authority to

invalidate a patent and its invalidity rulings are not binding on either the Office or a district

court. *See Tandon Corp. v. U.S.I.T.C.*, 831 F.2d 1017, 1019 (Fed. Cir. 1987). Therefore, an ITC

determination cannot conclusively resolve an assertion of patent invalidity, which instead

requires either district court litigation or a PTAB proceeding to obtain patent cancellation. Thus,

denying institution because of a parallel ITC investigation will not necessarily minimize

---

[8] *Fintiv* refers to ITC proceedings in discussing factor one. *Fintiv*, Paper 11 at 8–9. Addressing the situation where district court litigation is stayed pending an ITC investigation, *Fintiv* states in *dicta* that "it is difficult to maintain a district court proceeding on patent claims determined to be invalid at the ITC." *Id.* at 9.

[9] *See, e.g.*, *Philip Morris Prods. S.A. v. Rai Strategic Holdings*, Inc., IPR2020-00919, Paper 9 (PTAB Nov. 16, 2020).

potential conflicts between PTAB proceedings and district court litigation. For the foregoing reasons, the PTAB no longer discretionarily denies petitions based on applying *Fintiv* to a parallel ITC proceeding. This memorandum memorializes that practice. The PTAB will not discretionarily deny petitions based on applying *Fintiv* to a parallel ITC proceeding.

### *Sotera* Stipulations

*Fintiv* factor four looks at the overlap between the issues raised in the IPR petition and in the parallel proceeding in order to evaluate "concerns of inefficiency and the possibility of conflicting decisions." *Fintiv*, Paper 11 at 12. If the petition includes the same or substantially the same claims, grounds, arguments, and evidence as presented in the parallel proceeding, this fact has favored denial. *Id.* at 12. Conversely, if the petition includes materially different grounds, arguments, and/or evidence than those presented in the district court, this fact has tended to weigh against exercising discretion to deny institution. *Id.* at 12–13.

When a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition, it mitigates concerns of potentially conflicting decisions and duplicative efforts between the district court and the PTAB. *See Sotera*, Paper 12 at 18–19. With such a stipulation, if an IPR or PGR is instituted, the grounds the PTAB resolves will differ from those present in the parallel district court litigation. For these reasons, the PTAB will not discretionarily deny institution of an IPR or PGR in view of parallel district court litigation where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition. This clarification avoids inconsistent outcomes

between the PTAB and the district court and allows the PTAB to review grounds that the parallel district court litigation will not resolve.

### Trial Date

*Fintiv* factor two considers the proximity of the court's trial date to the Board's projected statutory deadline for a final written decision. When applying this factor, the PTAB has taken the "courts' trial schedules at face value absent some strong evidence to the contrary."[10] Thus, the PTAB has generally weighed this factor in favor of exercising discretion to deny institution if the trial date is scheduled before the projected statutory deadline for a final written decision.

In response to the RFC, a number of commenters expressed concern with the use of trial dates as a factor.[11] Stakeholders correctly noted that scheduled trial dates are unreliable and often change. A court's scheduled trial date, therefore, is not by itself a good indicator of whether the district court trial will occur before the statutory deadline for a final written decision.

Accordingly, when analyzing the proximity of the court's trial date under factor two of *Fintiv*, when other relevant factors weigh against exercising discretion to deny institution or are neutral, the proximity to trial should not alone outweigh all of those other factors. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed Cir. 2009). Parties may present evidence regarding the most recent statistics on median time-to-trial for civil actions in the district court in which the

---

[10] *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 13 (May 13, 2020) (informative) (applying the *Fintiv* factors articulated in the precedential *Fintiv* decision).

[11] *See USPTO Executive Summary of Public Views on Discretionary Institution of AIA Proceedings* (Jan. 2021) (available at https://www.uspto.gov/sites/default/files/documents/ USPTOExecutiveSummaryofPublicViewsonDiscretionaryInstitutiononAIAProceedingsJanuary2 021.pdf).

parallel litigation resides[12] for the PTAB's consideration. Where the parties rely on time-to-trial statistics, the PTAB will also consider additional supporting factors such as the number of cases before the judge in the parallel litigation and the speed and availability of other case dispositions. *See id.; In re Google LLC,* No. 2021-178, 2021 WL 5292267 at *3 (Fed. Cir. 2021).

## Conclusion

In summary, the PTAB will not deny institution of an IPR or PGR under *Fintiv* (i) when a petition presents compelling evidence of unpatentability; (ii) when a request for denial under *Fintiv* is based on a parallel ITC proceeding; or (iii) where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition. Additionally, when the PTAB is applying *Fintiv* factor two, the PTAB will consider the speed with which the district court case may come to trial and be resolved. The PTAB will weigh this factor against exercising discretion to deny institution under *Fintiv* if the median time-to-trial is around the same time or after the projected statutory deadline for the PTAB's final written decision. That said, even if the PTAB does not deny institution under *Fintiv*, it retains the right to deny institution for other reasons under 35 U.S.C. §§ 314(a), 324(a), and 325(d). For example, the PTAB may deny institution if other pertinent circumstances are present, such as abuse of process by a petitioner.

This interim guidance applies to all proceedings pending before the Office. This interim guidance will remain in place until further notice. The Office expects to replace this interim guidance with rules after it has completed formal rulemaking.

---

[12] The most recent statistics are available at: https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1.

6/6/25, 2:11 PM
Director Vidal provides clarity to Patent Trial and Appeal Board practice on discretionary denials of patent challenges based on parall…

Case: 25-133    Document: 2    Page: 66    Filed: 06/16/2025



🇺🇸 **An official website of the United States government**

Here's how you know ⌄


UNITED STATES
PATENT AND TRADEMARK OFFICE ®

[Home](#) > [About Us](#) > [News & Updates](#)
> Director Vidal provides clarity to Patent Trial and Appeal Board practice on discretionary denials of patent challenges based on parallel litigation

# Director Vidal provides clarity to Patent Trial and Appeal Board practice on discretionary denials of patent challenges based on parallel litigation

June 22, 2022          Press Release:  22-14

**CONTACT: (Media Only)**
Paul Fucito or Mandy Kraft
(571) 272-8400 or
paul.fucito@uspto.gov or
mandy.kraft@uspto.gov

WASHINGTON – The Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (USPTO), Kathi Vidal, released a memorandum on the "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" ("guidance memo") that clarifies the Patent Trial and Appeal Board (PTAB) practice.

As outlined in the guidance memo, to benefit the patent system and the public good, the PTAB will not deny institution of an IPR or PGR under Fintiv (i) when a petition presents compelling evidence of unpatentability; (ii) when a request for denial under Fintiv is based on a parallel ITC proceeding; or (iii) where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition. Additionally, when the PTAB is applying Fintiv factor two, the PTAB will consider the speed with which the district court case may come to trial and be resolved. The PTAB will weigh this factor against exercising discretion to deny institution under Fintiv if the median time-to-trial is around the same time or after the projected statutory deadline for the PTAB's final written decision. That said, even if the PTAB does not deny institution under Fintiv, it retains the right to deny institution for other reasons under 35 U.S.C. §§ 314(a), 324(a), and 325(d). For example, the PTAB may deny institution if other pertinent circumstances are present, such as abuse of process by a petitioner.

"The Patent Trial and Appeal Board serves an important role in strengthening the patent system in America," said USPTO Director Vidal. "The USPTO is committed to providing clarity and transparency around all our processes, especially in PTAB's practice of discretionary denials. It is critical that we all play

Back to top

Appx034

Case 25-133    Document: 2    Page: 67    Filed: 06/16/2025

a role in ensuring that our patent system serves the public good the way it was intended. I look forward to hearing more from our stakeholders on these issues."

The **USPTO today also released a study** (executive summary **here** and appendix **here**) on the impact of PTAB denials of AIA petitions when there is a parallel district court proceeding addressing the same patent. The PTAB Parallel Litigation Study, which explores "Fintiv denials" based on the Fintiv precedential decision, covers a time period from the second quarter of fiscal year 2019 — when the first PTAB precedential decision (NHK) on this issue was designated — through the first quarter of fiscal year 2022. The study offers authoritative data that reveals a sharp overall decline in Fintiv denials. It also reveals only three instances of Fintiv denials in pharmaceutical patent challenges.

"Authoritative data helps inform and advance the conversation around the impact of PTAB discretionary denials by offering key insights and trends," continued Director Vidal. "The work in this area is centered around our mission to issue and maintain robust and reliable patents, while advancing the goals of the America Invents Act."

The study found that:

- After Fintiv was designated precedential, parallel litigation was raised in about 40% of all cases.
- Fintiv denials peaked in the second quarter of fiscal year 2021 and dropped significantly afterward.
- The PTAB had issued no Fintiv denials based on parallel litigation in the Western District of Texas since August 2021.
- The USPTO's guidance on using stipulations appears to have led to an increase in stipulation filings and a significant decrease in Fintiv.
- The PTAB has denied institution based on Fintiv of only three total AIA petitions challenging drug patents: two Orange Book-listed patents and one biologic drug patent.

The PTAB plans to discuss the results of the study in further detail at an upcoming **Boardside Chat.**

The Director's guidance memo provides interim guidance while the USPTO prepares to engage in rulemaking on proposed approaches. The guidance memo is available on the PTAB's **resources and guidance page** ⬏, and the results of the study, along with the executive summary and appendix, are available on the PTAB's **statistics page** ⬏ under "Special reports."

Stay current with the USPTO by subscribing to receive email updates through our **Subscription Center**.

**More Press Releases**

Was this page helpful?   

 Share this page     Print this page



Appx035

6/6/25, 2:11 PM    Director Vidal provides clarity to Patent Trial and Appeal Board action on discretionary denials of patent challenges based on parall…

Case: 25-133    Document: 2    Page: 68    Filed: 06/16/2025

Additional information about this page

## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

| your@email.com | Subscribe |

About the USPTO    •    Search for patents    •    Search for trademarks

US Department of Commerce

Accessibility

Privacy Policy

Terms of Use

Financial and Performance Data

Vulnerability Disclosure Policy

Freedom of Information Act

Inspector General

NoFEAR Act

USA.gov




Follow us

  

Appx036



UNITED STATES
PATENT AND TRADEMARK OFFICE

uspto

# Patent Trial and Appeal Board Boardside Chat:

## Discretionary denials in AIA post-grant proceedings with parallel litigation

Michael Tierney, Acting Deputy Chief Judge, Patent Trial and Appeal Board

Michael Kim, Vice Chief Judge, Patent Trial and Appeal Board

Justin Busch, Administrative Patent Judge, Patent Trial and Appeal Board

July 7, 2022



UNITED STATES
PATENT AND TRADEMARK OFFICE

# Question/comment submission

- To send in questions or comments during the webinar, please email:

  – PTABBoardsideChat@uspto.gov

3



4

# **Agenda**

- Interim procedure for discretionary denials in AIA proceedings with parallel district court litigation

- PTAB's parallel litigation study on discretionary denials in AIA trials with parallel litigation for 2019-2022

uspto

# Interim procedure for discretionary denials in AIA proceedings with parallel district court litigation

Michael Tierney
Acting Deputy Chief Judge
Patent Trial and Appeal Board

# Parallel litigation: key cases

- The Office designated *NHK* as precedential on May 7, 2019

  – *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (Sept. 12, 2018)

  – Denying institution because (1) the prior art was previously considered and (2) co-pending district court proceeding was nearing completion

- Following *NHK*, the Office designated *Fintiv* as precedential on May 5, 2020

  – *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB March 20, 2020)

  – Setting forth six factors to consider in cases involving a parallel proceeding

Appx042

# The Office's Request for Comments

- The Office issued a Request for Comments (RFC) on the PTAB's current approaches in October 2020

  – Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 FR 66502 (October 20, 2020)

  – https://www.uspto.gov/sites/default/files/documents/85_fr_66502_20201020.pdf

- The Office received 822 comments from stakeholders and published a summary of the comments in January 2021

  – https://www.uspto.gov/patents/ptab/comments-proposed-rules-discretion



# Interim guidance for denials under *Fintiv*

- Director Vidal issued interim guidance on June 21, 2022

  - https://www.uspto.gov/sites/default/files/documents/interim_proc_discretion ary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf

- The interim guidance:
  - is based on the comments received from stakeholders, including individuals
  - reflects the Director's consideration of feedback received from all forums, e.g., Congress, academics, small and individual inventors
  - solidifies and provides further clarifications regarding current practices
  - makes clear how some of the factors will be applied so that parties have certainty and avoid wasting resources



8

# Interim guidance for denials under *Fintiv*

- The interim guidance addresses:

  – Applicability of *Fintiv* factors 1-6 to ITC proceedings

  – *Fintiv* factor 4: *Sotera* stipulation

  – *Fintiv* factor 6: compelling merits

  – *Fintiv* factor 2: trial date

- The interim guidance became effective on June 21, 2022 and applies to all proceedings pending before the Office

- The Office is exploring potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking

9

uspto

# *Fintiv* factors

1. whether the **court** granted a stay or evidence exists that one may be granted if a proceeding is instituted;

2. ***proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;***

3. investment in the parallel proceeding by the **court** and the parties;

4. ***overlap between issues raised in the petition and in the parallel proceeding;***

5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

6. ***other circumstances that impact the Board's exercise of discretion, including the merits.***

10

uspto

# **Applicability of *Fintiv* to ITC proceedings**

- The PTAB will no longer discretionarily deny petitions based on applying *Fintiv* to a parallel U.S. International Trade Commission (ITC) proceeding

- Reasons:

  – Each of the *Fintiv* factors is directed to district court litigation, not to ITC proceedings

  – The ITC lacks authority to invalidate a patent and its invalidity rulings are not binding on either the Office or a district court

  – An ITC determination cannot conclusively resolve an assertion of patent invalidity

  – Denying institution because of a parallel ITC investigation does not minimize potential conflicts between PTAB proceedings and district court litigation



Appx047

# *Sotera* stipulation (*Fintiv* factor 4)

- PTAB will not discretionarily deny institution of an IPR or PGR where there is a stipulation not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition

  – *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020)

- Reasons:

  – Mitigates concerns of potentially conflicting decisions and duplicative efforts between the district court and the PTAB

  – The grounds before the PTAB will differ from those in the district court and will not be resolved in the district court litigation

Appx048

**uspto**

# Compelling merits (*Fintiv* factor 6)

- Compelling meritorious challenges will be allowed to proceed at the PTAB, even where district court litigation is proceeding in parallel

- Compelling merits:

  - Challenges in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence

  - The compelling evidence test affirms the PTAB's current approach of declining to deny institution under *Fintiv* where the evidence of record so far in the case would plainly lead to a conclusion that one or more claims are unpatentable.

  - More demanding than the "reasonable likelihood" and the "more likely than not" standards for institution of an IPR or PGR, respectively. *See* 35 U.S.C. §§ 314(a), 324(a)

Appx049

# Compelling merits (*Fintiv* factor 6)

- Reasons:

  - Consistent with PTAB's current approach on institution in view of strong evidence on the merits even when other factors weigh in favor of discretionary denial

  - Need to balance competing concerns of avoiding potentially conflicting outcomes and overburdening patent owners with strengthening the patent system by eliminating weak patents

  - Consistent with the authority given by Congress to revisit issued patents

  - PTAB proceeding continues even when the parallel proceeding settles or fails to resolve the patentability question

  - The patent system and the public good benefit from instituting compelling unpatentability challenges

- PTAB may still deny institution for proceedings where abuse has been demonstrated



Appx050

# Trial date (*Fintiv* Factor 2)

- The proximity to trial will not alone outweigh all of the other *Fintiv* factors

- Reason: Scheduled trial dates are unreliable and often change

- PTAB will look to the most recent statistics on median time-to-trial for civil actions in the relevant district court

  - https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1

- PTAB will also consider:

  - The number of cases before the judge in the parallel litigation

  - The speed to trial of other cases before the judge

15



Appx051

# Summary of interim guidance

- PTAB will *not* deny institution of an IPR or PGR under *Fintiv* when

  – A request for denial under *Fintiv* is based on a parallel ITC proceeding

  – A petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition

  – A petition presents compelling evidence of unpatentability

- PTAB will consider the speed with which the district court case may come to trial based on recent time-to-trial statistics and other evidence

- PTAB may deny institution for other reasons under §§ 314(a), 324(a), and 325(d).

16

Appx052

# Question/comment submission

- To send in questions or comments during the webinar, please email:

  – PTABBoardsideChat@uspto.gov

17



# LEAP



- Legal Experience and Advancement Program (LEAP)

- Designed to:

  – Aid in development of the next generation of patent practitioners

  – Encourage a diverse group of advocates to develop their skills before the PTAB

- To qualify, a patent agent or attorney must have:

  – Three or fewer substantive oral arguments in any federal tribunal, including PTAB



Appx054

Michael Kim, Vice Chief Judge
Justin Busch, Administrative Patent Judge
Patent Trial and Appeal Board

# PTAB Parallel Litigation Study
## (Data from Jan. 1, 2019 through Dec. 31, 2021)

# Parallel litigation: overview

- **Parallel litigation**: a scenario in which petitioner, patent owner, and the patent at issue are simultaneously engaged in a PTAB proceeding and litigation in another venue.

- The vast majority of petitioners (about 80% or higher) have been sued by patent owners in another venue prior to filing their petitions.

uspto

# Parallel litigation: key cases

**Fiscal Year 2019**

5/7/19

*NHK*
designated
precedential

**Fiscal Year 2020**

5/5/20

*Fintiv*
designated
precedential

7/13/20

*Sand Revolution*
designated
informative

**Fiscal Year 2021**

12/17/20

*Sotera Wireless*
designated
precedential

uspto

Appx057

21

# Parallel litigation: methodology

- All Decisions on Institution (DIs) and patent owner preliminary responses (POPRs) in each *inter partes* review (IPR), covered business method review (CBM), and post grant review (PGR) in the indicated time periods during Fiscal Years 2019 through 2022 (FY19–22) were reviewed to capture information regarding the *NHK/Fintiv* issue.

- The appendix (a separate document posted with this presentation) includes definitions and further methodology details.



# Parallel litigation study: topics

- Issue frequency
- Outcomes
- Stipulations
- Venue

Link to study

- https://www.uspto.gov/sites/default/files/documents/ptab_parallel_litigation_study_20220621_.pdf

23

uspto

# NHK/Fintiv issue frequency

# *NHK/Fintiv* issue frequency: summary

- After *NHK* was designated precedential (FY19 Q2):

  - *NHK* was raised in about 10-15% of cases.

- After *Fintiv* was designated precedential (FY20 Q3):

  - *NHK/Fintiv* was raised in about 40% of cases.



Appx061

# NHK/Fintiv issue frequency

**(FY19 Q2 to FY22 Q1: Jan. 1, 2019 to Dec. 31, 2021)**



In this graphic, the bars show the number of cases where *NHK/Fintiv* was raised, and the line shows the percent of all cases in which *NHK/Fintiv* was raised.

After *Fintiv* was designated precedential, parallel litigation was raised in about 40% of all cases, regardless of whether ultimately there was an institution.

Appx062

26

# NHK/Fintiv outcomes

# *NHK/Fintiv* outcomes: summary

DIs denying institution (at least in part) because of *NHK/Fintiv*:

- Were about **1%** of all outcomes in FY19 Q2 to Q4.

- Were about **4%** of all outcomes in FY20.

- Peaked at about **11%** of all outcomes in a quarter in FY21 Q1 and Q2.

- Fell to about **2%** of all outcomes in a quarter by FY22 Q1.

Appx064

# NHK/Fintiv outcomes

**(FY19 Q2 to FY22 Q1: Jan. 1, 2019 to Dec. 31, 2021)**



This graphic shows the outcomes of DIs that analyze *NHK/Fintiv* specifically, the number of *NHK/Fintiv* denials (orange) versus the number of *NHK/Fintiv* **institutions (light blue)**.

*NHK/Fintiv* denials peaked in FY21 Q2 and dropped significantly afterwards.

Appx065

29

uspto



# NHK/Fintiv outcomes
## (FY19 Q2 to FY22 Q1: Jan. 1, 2019 to Dec. 31, 2021)

NHK
Precedentia
Q2 FY19

~28%

|  | 2019 | | | 2020 | | | | 2021 | | | | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 |
| Orange | 1.0% | 0.5% | 0.8% | 1.0% | 3.0% | 5.7% | 7.4% | 11.0% | 10.6% | 5.5% | 5.1% | 1.8% |
| Blue | 4.5% | 7.8% | 4.4% | 12.5% | 7.0% | 12.0% | 14.2% | 16.5% | 17.8% | 20.6% | 14.8% | 25.1% |
| Gray | 94.5% | 91.7% | 94.8% | 86.5% | 90.0% | 82.3% | 78.3% | 72.6% | 71.6% | 74.0% | 80.1% | 73.1% |

Fintiv
Precedential
Q3 FY20

This graphic shows the percentage of cases that are *NHK/Fintiv* denials (orange) and *NHK/Fintiv* institutions (light blue) versus all other DIs and pre-DI terminations (gray).

30

**Most cases do not address *NHK/Fintiv*.**

Appx066

uspto

# Question/comment submission

- To send in questions or comments during the webinar, please email:

  – PTABBoardsideChat@uspto.gov

31



# Stipulations in an *NHK/Fintiv* analysis

# *NHK/Fintiv* **stipulations: summary**

- After *Sand* was designated informative in FY20 Q4:

  ▪ The number of stipulations filed increased.

- After *Sotera* was designated precedential in FY21 Q1:

  ▪ The number of stipulations filed increased further.

  ▪ DIs analyzing *NHK/Fintiv* and noting a stipulation frequently resulted in avoiding an *NHK/Fintiv* denial.

Appx069



# NHK/Fintiv stipulations

**Outcomes for DIs in which stipulations are noted**
**(FY20 Q3 to FY22 Q1: Apr. 1, 2020 to Dec. 31, 2021)**

This graphic depicts the percentage of DIs analyzing *NHK/Fintiv* and noting a stipulation in which trial was **instituted (light blue)** or **denied (orange)**.

Most DIs noting a stipulation **did not** deny based on *NHK/Fintiv*.

Appx070

34

# NHK/Fintiv stipulations:

**Outcomes for DIs in which stipulations are noted**

**(FY20 Q3 to FY22 Q1: Apr. 1, 2020 to Dec. 31, 2021)**



This graphic depicts the number of DIs analyzing *NHK/Fintiv* and noting a stipulation in which trial was **instituted (light blue)** or **denied (orange)**.

After *Sotera*, stipulation filings increased; by Q3 of FY21, DIs noting a stipulation did not frequently deny institution based on *NHK/Fintiv*.

Appx071

35

# NHK/Fintiv parallel litigation venues

# *NHK/Fintiv* parallel litigation venues: summary

- In about 60% of *NHK/Fintiv* analyses in the studied quarters for FY19 to FY22, in which a parallel litigation venue was identified, the identified district court was one of the Western District of Texas, the Eastern District of Texas, and the District of Delaware.

- In FY21, the Western District of Texas was the venue identified as the most frequently discussed in DIs analyzing *NHK/Fintiv*.

- In FY21, the Eastern District of Texas is the venue with the most *NHK/Fintiv* denials.

37

Appx073



# NHK/Fintiv parallel litigation venues
**(FY19 Q2 to FY22 Q1: Jan. 1, 2019 to Dec. 31, 2021)**

E.D. Tex.

- 2019: 10
- 2020: 27, 19
- 2021: 56, 31
- 2022: 6

W.D. Tex.

In FY21, the W.D. Texas was the venue most frequently discussed in DIs analyzing *NHK/Fintiv*, and petitions were denied based on *NHK/Fintiv* in about 15% of these cases.

- 2019: 1
- 2020: 13, 7
- 2021: 16, 99
- 2022: 44

This graphic depicts the number of DIs analyzing *NHK/Fintiv* involving the **Eastern District of Texas (left)** and the **Western District of Texas (right)**, in which trial was **instituted (light blue)** or **denied (orange)**.

38

Appx074



# NHK/Fintiv parallel litigation venues
## (FY19 Q2 to FY22 Q1: Jan. 1, 2019 to Dec. 31, 2021)

This graphic depicts the number of DIs analyzing *NHK/Fintiv* involving the **District of Delaware (left)** and **all other venues (right)**, in which trial was **instituted (light blue)** or **denied (orange)**.

39

Appx075

# Parallel litigation: summary

- After *Fintiv* was designated precedential, discretionary denial based on parallel litigation has been raised in about half of all cases in which petitioner was sued by patent owners in another venue

- The number of cases denying institution dropped significantly after peaking during the first half of fiscal year 2021

- Stipulation filings increased after *Sotera* was designated precedential, and DIs noting stipulations frequently avoid denials based on *NHK/Fintiv*

- The majority of cases involving an *NHK/Fintiv* issue involved co-pending litigation in one of the Western District of Texas, the Eastern District of Texas, and the District of Delaware

    – The Western District of Texas was the venue most frequently discussed in DIs analyzing *NHK/Fintiv*, and, during the study period, no corresponding petitions were denied based on *NHK/Fintiv* since August 2021



Appx076

# Question/comment submission

- To send in questions or comments during the webinar, please email:

  – PTABBoardsideChat@uspto.gov

41



# Next Boardside Chat

- July 14, 2022, at 12-1 pm ET
- Topic: PTAB Law Clerk Program

  – Learn about Patent Attorney (Law Clerk) opportunities at PTAB

  – Hear from current and former PTAB law clerks and practitioners

  – Applications open soon for one year term starting October 2023

  – Information about the application timeline and requirements

- Register for and learn about upcoming Boardside Chats, and access past Boardside Chats at:

  https://www.uspto.gov/patents/ptab/ptab-boardside-chats



42

Appx078



| | |
|---|---|
| **From:** | Roy Chamcharas |
| **Sent:** | Tuesday, January 14, 2025 4:32 PM |
| **To:** | Hannah, James; Fuller, Jenna; Kastens, Kris; Price, Jeffrey H.; Keller, Charles; svdocketing@kramerlevin.com |
| **Cc:** | Andrew M. Mason; Todd M. Siegel; Samuel Thacker; Shelby A. Stepper; SAP_Cyandia_IPRs |
| **Subject:** | SAP AMERICA, INC. v. CYANDIA, INC. - IPR2024-01432, -01433, -01495, and -01496 - Sotera-type stipulation |

Counsel,

SAP stipulates that, should IPR be instituted in IPR2024-01432, 2024-01433, 2024-01495, or 2024-01496, SAP will not pursue in the E.D. Tex. district court litigation any ground of unpatentability that is raised or reasonably could have been raised in any instituted IPR.

Thank you,

Roy



**Roy Chamcharas** | Partner
Pronouns: He/him/his
P. 503.595.5300 D. 503.473.0984 A. 121 SW Salmon St., Suite 1600, Portland, OR 97204 USA

**PD** *Patent Defenses* | Celebrating 20 Years of Our Legal Research Tool for Patent Lawyers

The information contained in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is not authorized. If you are not the intended recipient, any disclosure, copying, distribution, use, or any action you take or fail to take in reliance on it, is prohibited and may be unlawful. Please immediately notify us by telephone (collect) or return e-mail, destroy the original message, and retain no copy - on your system or otherwise.

SAP EXHIBIT 1045
*SAP America, Inc. v. Cyandia, Inc.*
IPR2024-01496

The Wayback Machine - https://web.archive.org/web/20250305132751/https://www.uspto.gov/about-us/news-updates/uspto-rescinds-mem...



An official website of the United States government

Here's how you know ⌄

**USPTO** UNITED STATES
PATENT AND TRADEMARK OFFICE ®

Home  >  About Us  >  News & Updates  >  USPTO rescinds memorandum addressing discretionary denial procedures

# USPTO rescinds memorandum addressing discretionary denial procedures

February 28, 2025

Today, the USPTO rescinded the June 21, 2022, memorandum entitled "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" (Memorandum).

Parties to post-grant proceedings should refer to Patent Trial and Appeal Board (PTAB) precedent for guidance, including Apple Inc. v. Fintiv, Inc., IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) and Sotera Wireless, Inc. v. Masimo Corp., IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A).

To the extent any other PTAB or Director Review decisions rely on the Memorandum, the portions of those decisions relying on the Memorandum shall not be binding or persuasive on the PTAB.

---

⮜ Share this page    🖶 Print this page

Additional information  about this page

## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

| your@email.com | ⋯ | Subscribe |

About the USPTO   •   Search for patents   •   Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Vulnerability Disclosure Policy
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

Follow us



# United States Patent and Trademark Office
*Patent Trial and Appeal Board*

MEMORANDUM

To:        Members of the Patent Trial and Appeal Board

From:      Scott R. Boalick, Chief Administrative Patent Judge

Subject:   Guidance on USPTO's recission of "Interim Procedure for Discretionary
           Denials in AIA Post-Grant Proceedings with Parallel District Court
           Litigation"

Date:      March 24, 2025


On February 28, 2025, the USPTO rescinded the June 21, 2022 memorandum
entitled "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings
with Parallel District Court Litigation" ("Interim Procedure"). The Interim Procedure
was intended to provide guidance while the USPTO explored potential rulemaking, but
the USPTO did not subsequently propose a final rule addressing the Director's and, by
delegation, the Patent Trial and Appeal Board's ("Board") exercise of discretionary
institution in an *inter partes* review ("IPR") or a post-grant review ("PGR") in view of
a parallel litigation. In the absence of rulemaking, the USPTO rescinded the Interim
Procedure to restore policy in this area to the guidance in place before the Interim
Procedure, including the Board's precedential decisions in *Apple Inc. v. Fintiv, Inc.*,
IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) ("*Fintiv*") and *Sotera Wireless, Inc.
v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) ("*Sotera*"). This
memorandum sets forth additional guidance.

P.O. Box 1450, Alexandria, VA 22313-1450 • www.uspto.gov

First, the Interim Procedure's recission applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending. The Board will consider timely requests for additional briefing on the application of the Interim Procedure's recission on a case-by-case basis. Absent extraordinary circumstances, the Board will not revisit a decision on institution if the time for seeking Director Review or rehearing has passed.

Second, the Board will apply the *Fintiv* factors when there is a parallel proceeding at the International Trade Commission ("ITC"). As the *Fintiv* decision explains, although an ITC final invalidity determination does not have preclusive effect, it is difficult as a practical matter to assert patent claims that the ITC has determined are invalid. *See Fintiv*, Paper 11 at 8–9. Additionally, instituting an IPR or a PGR where the ITC has set a target date for completing its investigation (i.e., the full Commission's final determination) to occur earlier than the Board's deadline to issue a final written decision in a challenge involving the same patent claims means that multiple tribunals may be adjudicating validity at the same time, which may increase duplication and expenses for the parties and the tribunals. Thus, the Board is more likely to deny institution where the ITC's projected final determination date is earlier than the Board's deadline to issue a final written decision, and the Board is less likely to deny institution under *Fintiv* where the ITC projected final determination date is after the Board's deadline to issue a final written decision.

Third, a timely-filed *Sotera* stipulation[1] (*i.e.*, a stipulation from a petitioner that, if an IPR or PGR is instituted, the petitioner will not pursue in district court

---

[1] *See NXP USA, Inc. v. Impinj, Inc.*, IPR2021-01556, Paper 13 (Sept. 7, 2022) (precedential) (holding that the only appropriate time for a petitioner to offer a stipulation is prior to the Board's decision on institution).

2

(or in the ITC) any ground raised or that could have been reasonably raised in the IPR/PGR) is highly relevant, but will not be dispositive by itself. Instead, the Board will consider such a stipulation as part of its holistic analysis under *Fintiv*.

Fourth, in applying *Fintiv*, the Board may consider any evidence that the parties make of record that bears on the proximity of the district court's trial date or the ITC's final determination target date, including median time-to-trial statistics for civil actions in the district court in which the parallel litigation resides.

Fifth, as stated in *Fintiv*, the factors considered in the exercise of discretion are part of a balanced assessment of all the relevant circumstances in the case, including the strength of the merits. However, compelling merits alone is not dispositive in making the assessment.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SAP AMERICA, INC.,
Petitioner,

v.

CYANDIA, INC.,
Patent Owner.

IPR2024-01496
Patent 8,595,641

_____

**<u>PETITIONER'S REQUEST FOR DIRECTOR REVIEW</u>**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................1

II.     LEGAL STANDARD ...................................................................2

III.    PROCEDURAL BACKGROUND .................................................3

IV.     ARGUMENT................................................................................5

        A.      The Board's Speculations Causing It To Dismiss
                The *Sotera* Stipulation Were An Abuse Of Discretion........................5

        B.      The Board's Finding That Factor 4 Favors
                Discretionary Denial Was An Abuse of Discretion .............................7

        C.      The Director Should Resolve The Panel Split On This Issue .............10

        D.      That Most Challenged Claims Will Not Be Challenged In
                District Court Favors Not Discretionarily Denying Institution ..........12

        E.      The Director Should Institute IPR Because
                Factor 3 Favors And Factors 4 And 6
                Strongly Favor Not Exercising Discretionary Denial ........................13

V.      CONCLUSION...........................................................................14

        CERTIFICATE OF SERVICE ...................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
   821 F.3d 1359 (Fed. Cir. 2016) ...............................................................3

**Board Decisions**

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020)....................................4

*Apple Inc. v. Seven Networks, LLC*,
   IPR2020-00156, Paper 10 at 17 (PTAB June 15, 2020) ...................2, 13

*Dell, Inc. v. Universal Connectivity Tech. Inc.*,
   IPR2024-01428, Paper 12 (PTAB April 7, 2025)...............................1, 11

*Motorola Sol.'s, Inc. v. Stellar, LLC*,
   IPR2024-01205 to -01208, Paper 19 at 4 (Mar. 28, 2025)......................9

*Samsung Electronics Co. v. Harbor Island Dynamic, LLC*,
   IPR2024-01404, Paper No. 9 (PTAB April 4, 2025)...............................8

*Sotera Wireless, Inc. v. Masimo Corp.*,
   IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020)..................................4, 8

**Other Authorities**

USPTO, Director Review Process, § 2.B (last updated Mar. 18, 2025)....................2

## I.  **INTRODUCTION**

The Office's recent guidance on discretionary denials of IPR petitions has spawned conflicting Board panel decisions on the same day. In quite similar fact scenarios, each with a *Sotera* stipulation, one panel found the *Sotera* stipulation caused *Fintiv* Factor 4 to *strongly favor not* discretionarily denying institution, *Dell, Inc. v. Universal Connectivity Tech. Inc.*, IPR2024-01428, Paper 12 at 8 (PTAB Apr. 8, 2025), while the panel here found that Factor 4 *favors* discretionarily denying institution, Paper 13 ("Decision") at 8–9. The Director should resolve the panel split on this important issue of law and policy.

A second reason to grant review is that the panel here abused its discretion. Despite finding strong merits (Decision at 10–11) and minimal investment in the district court action (*id.*, 6–7), the Board discretionarily denied institution of *inter partes* review of claims 1–11, 13, 16, 18, and 31–34 of U.S. Patent No. 8,595,641 (EX1001, "'641 patent"). In finding *Fintiv* Factor 4 favored discretionary denial despite Petitioner's *Sotera* stipulation and despite most claims challenged by the Petition no longer being at issue in the district court, the Board abused its discretion in three ways.

*First*, it speculated without basis in the record that Petitioner would seek to assert in the district court the same publications asserted here. This speculation-based dismissal of a *Sotera* stipulation lacks evidentiary support.

*Second*, the Board deviated from the precedential decision of *Sotera* holding that this type of stipulation *strongly favors not* exercising discretionary denial.

*Third*, the Board erred in giving no weight to Petitioner's undisputed assertion that most of the claims challenged in the IPR would not be at issue in the district court on account of the district court's Order limiting the asserted claims (*see* EX3001, p. 7; Paper 9 at 2). *Cf. Apple Inc. v. Seven Networks, LLC*, IPR2020-00156, Paper 10 at 17 (PTAB Jun. 15, 2020) (that the IPR would address 11 claims not addressed in the district court action favored the petitioner under *Fintiv* Factor 4).

The Director should correct these errors and grant institution in view of (1) the *Sotera* stipulation, (2) the fact that most challenged claims will not be litigated in the district court action, and (3) the strong merits recognized in the Board's decision: Petitioner's challenge is neither "marginal or close" but instead "is straightforward and definitely meets the standard for institution, even when balanced against Patent Owner's counterarguments," which "read like an opposition to an anticipation challenge." Decision at 10.

## II.    <u>LEGAL STANDARD</u>

This Decision presents the following grounds that justify Director Review: "(a) an abuse of discretion [and] (b) important issues of law or policy." USPTO, Director Review Process, § 2.B (last updated Mar. 18, 2025). The Decision constitutes an "abuse of discretion" for each of the following reasons: "An abuse of

discretion is found if [a] decision: (1) is clearly unreasonable, arbitrary, or fanciful;

(2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact

finding; or (4) involves a record that contains no evidence on which the Board could

rationally base its decision." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,

821 F.3d 1359, 1367 (Fed. Cir. 2016) (internal citation omitted).

## III.    **PROCEDURAL BACKGROUND**

On February 12, 2024, Cyandia ("Patent Owner") sued SAP ("Petitioner") in

the Eastern District of Texas for alleged infringement of four patents: U.S. 8,499,250

("the '250 patent"), 8,595,641 ("the '641 patent"), 8,578,285 ("the '285 patent") and

8,751,948 ("the '948 patent").

Roughly four months after receiving Patent Owner's infringement

contentions, Petitioner filed its Petition asserting printed publications describing the

IBM WebSphere system.

With its Preliminary Response raising *Fintiv* arguments, Patent Owner

submitted a declaration stating that "Petitioner served its invalidity contentions

under Eastern District of Texas Patent Local Rule 3-3 on July 10, 2024. Within the

invalidity contentions, Petitioner asserts the Websphere (sic) product and the six

IBM WebSphere references that are also asserted in" the IPR petition. EX2007, ¶ 3.

Patent Owner identified no specific evidence that Petitioner had relied upon in the

district court action to describe the WebSphere product.

In response, Petitioner served and filed a *Sotera* stipulation, stating: "should IPR be instituted … SAP will not pursue in the E.D. Tex. district court litigation any ground of unpatentability that is raised or reasonably could have been raised in any instituted IPR." EX1045. At that time, under the governing June 21, 2022 "Interim Procedure" memorandum, *Sotera* stipulations barred *Fintiv* denial.

On February 28, 2025, the Office rescinded the "Interim Procedure" memorandum and directed parties to follow *Fintiv* and *Sotera*: "Parties to post-grant proceedings should refer to Patent Trial and Appeal Board (PTAB) precedent for guidance, including *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) and *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A)."

The Board then granted additional briefing addressing the impact of this rescission on the *Fintiv* issues. The supplemental *Fintiv* briefs were filed on March 12, 2025. Papers 9, 10. On Factor 4, Petitioner explained that most of the challenged claims will be dropped from the district court action per a district court Order. Paper 9 at 2. Patent Owner again identified no specific evidence Petitioner had relied upon in the district court action to describe the WebSphere product.

On March 24, 2025, the Office issued a Guidance memorandum stating that a *Sotera* stipulation is "highly relevant, but will not be dispositive by itself."

On March 26, 2025, the Director issued a memorandum entitled "Interim Processes for PTAB Workload Management" which by its terms does not apply to this proceeding.

On April 7, 2025, the Board panel found that despite Petitioner's *Sotera* stipulation, Factor 4 weighed in favor of discretionary denial, and it denied institution primarily for that reason: "We find particularly significant that, if we were to institute review and trigger Petitioner's *Sotera* stipulation, Petitioner would remain free to pursue a system-based invalidity challenged in the district court based on essentially the same prior art relied upon here." Decision at 11. The panel did not cite the Office's March 24, 2025, guidance that a *Sotera* stipulation is "highly relevant."

On April 10, 2025, the Director denied as untimely Petitioner's request to submit as an exhibit Petitioner's "*Sotera* plus" stipulation that it served on Patent Owner shortly after the Decision. Accordingly, Petitioner has notified Patent Owner that it has withdrawn that "*Sotera*" plus stipulation (but not its earlier *Sotera* stipulation).

## IV.  ARGUMENT

### A.  The Board's Speculations Causing It To Dismiss The *Sotera* Stipulation Were An Abuse Of Discretion

No evidence in the record supports the Board's apparent assumption that Petitioner would at trial in the district court action assert the same WebSphere

publications it asserts in its Petition here. Patent Owner instead cited evidence from July 2024—seven months before Petitioner served its *Sotera* stipulation—that Petitioner's invalidity contentions cited the "Websphere (sic) product" along with the six IBM WebSphere publications also cited in the IPR. EX2007, ¶ 3. But there is no evidence that Petitioner currently intends to assert a WebSphere product at trial or, if it did, use the same WebSphere publications at issue here. In other words, there is no evidence of likely duplication of effort.

Yet despite this evidentiary vacuum, the Board speculated that Petitioner "may continue to press" the same publications in district court, and on that basis found Factor 4 favored discretionary denial:

> Although Petitioner has filed a *Sotera* stipulation, we agree with Patent Owner that the stipulation has limited practical effect in reducing the overlapping efforts here and in the Litigation. Petitioner contends in the district court that the system described in the WebSphere materials renders at least some of the challenged claims invalid. Because Petitioner cannot challenge claims in this proceeding based on a public use or sale of the WebSphere system, Petitioner's *Sotera* stipulation would not prevent Petitioner from asserting an invalidity defense in the district court based on the public use or sale of the WebSphere system. We understand that, in the Litigation, Petitioner has relied upon the WebSphere publications as

prior art, *presumably* as evidence describing the WebSphere system that was publicly used and on sale.

Regardless of any decision rendered in this proceeding on the patentability of the challenged claims based on the WebSphere printed publications, *Petitioner may continue to press an invalidity defense based on the same evidence presented here*.

Decision at 8–9 (emphasis added).

That conclusion—that "Petitioner may continue to press an invalidity defense based on the same evidence"—was central to the Board's reasoning. But it lacked any factual basis. It was pure speculation about what defenses Petitioner might assert post stipulation and post claim and prior art narrowing, and what evidence it would assert to advance those defenses, based on invalidity contentions served roughly nine months earlier.

In short, the Board's dismissal of the *Sotera* stipulation—and its denial of institution—rested on speculation, not evidence. That is an abuse of discretion and warrants Director Review.

## B.    The Board's Finding That Factor 4 Favors Discretionary Denial Was An Abuse of Discretion

The Board found that *Fintiv* Factor 4 favors discretionary denial of institution—despite the presence of a *Sotera* stipulation. That conclusion directly

contradicts the controlling *Sotera* decision, which holds that such a stipulation *strongly favors institution*:

> Petitioner's broad stipulation ensures that an *inter partes* review is a 'true alternative' to the district court proceeding. *Id.* Thus, we find that this factor weighs strongly in favor of not exercising discretion to deny institution under 35 U.S.C. § 314(a).

*Sotera Wireless, Inc. v. Masimo Corp.,* IPR2020-01019, Paper 12 at 19 (PTAB Dec. 1, 2020); *accord Apple, Inc. v. Haptic, Inc.*, IPR2024-01476, Paper 12 at 12 (PTAB Apr. 4, 2025) ("Petitioner's broad stipulation mitigates certain concerns of duplicative efforts between the District Court and the Board, as well as concerns of potentially conflicting decisions. *Sotera*, Paper 12 at 19. Thus, factor 4 weighs strongly in favor of not exercising discretion to deny institution."); *Samsung Electronics Co. v. Harbor Island Dynamic, LLC*, IPR2024-01404, Paper 9 at 10 (PTAB April 4, 2025) (on account of *Sotera* stipulation, Factor 4 strongly favors not discretionarily denying institution.)

*Sotera* remains precedential. The Office's February 28, 2025, Notice rescinding the "Interim Procedure" memorandum cites *only Fintiv* and *Sotera* as binding precedents governing discretionary denial. Likewise, the March 24, 2025, Guidance memorandum affirms that a *Sotera* stipulation is "highly relevant." With the *Sotera* stipulation in place, it is certain that the same ground of unpatentability

will not be presented to the Board and the district court. Notably, the stipulation in *Sotera* did not disclaim reliance on related product prior art—yet the Board in that precedential decision still held it "strongly" favors institution. The panel's conclusion here cannot be reconciled with that binding precedent or the Office's recent express endorsements of it.

The Director's review decision in *Motorola Sol.'s, Inc. v. Stellar, LLC*, IPR2024-01205 to -01208, Paper 19 at 4 (Mar. 28, 2025), is not to the contrary. First, the Board did not cite this decision. Second, Petitioner did not have a realistic opportunity to address that March 28th decision in time to affect the Board's April 7 Decision. Third, *Motorola* did not rescind *Sotera* or the February 28 and March 14 Office guidance embracing *Sotera*. Fourth, *Motorola* noted that even when corresponding system art was at issue in the district court action, the *Sotera* stipulation still "mitigate[s] some concern of duplication." *Motorola* at 4. In short, *Motorola* merely found that a *Sotera* stipulation did not outweigh multiple other *Fintiv* factors when they all favored denial. That is not the situation here. Unlike *Motorola*, where Factors 1 and 3 each favored discretionary denial, here Factor 1 is neutral and Factor 3 favors institution. Thus, *Motorola* cannot justify the panel's deviation from *Sotera* or the denial of institution based on Factor 4.

**C.**     **The Director Should Resolve The Panel Split On This Issue**

Simultaneous conflicting panel decisions on important issues affecting most IPR petitions call for Director resolution. Resolving this panel split is needed for clarity, consistency, and predictability in PTAB proceedings.

On the same day as the panel's Decision here, another panel—where the petitioner had filed a *Sotera* stipulation and reserved the right to assert in the district court the same prior art publications asserted in its IPR petition in combination with non-publication prior art—found *Sotera* to "mitigate[] certain concerns of duplicative efforts … as well as concerns of potentially conflicting decisions" and found that *Fintiv* Factor 4 "strongly favors" not exercising discretionary denial. *Dell*, Paper 12 at 8, 16 (nevertheless denying institution primarily because "the merits of Petitioner's challenge are not particularly strong"). Unlike the panel here, the *Dell* panel expressly declined to speculate about the district court trial:

> Although we acknowledge Patent Owner's concern about lack of overlap stemming from Petitioner's reservation of rights in its Sotera stipulation, our evaluation at this juncture is based on the facts before us, not on how Petitioner might challenge the validity of the patent at trial. Further, Patent Owner does not identify any art asserted by Petitioner in the litigation that might fall within this reservation. On the present record, Petitioner's broad stipulation mitigates certain concerns of duplicative

> efforts between the District Court and the Board, as well
> as concerns of potentially conflicting decisions. *Sotera*,
> Paper 12 at 19. Accordingly, factor 4 strongly favors not
> exercising discretionary denial.

*Id.* at 8.

Here, similarly, Patent Owner identifies no WebSphere-related evidence that Petitioner will try to assert at the district court trial notwithstanding its *Sotera* stipulation.

The Director should resolve this panel split in favor of the *Dell* decision (and the above-cited April 4, 2025 Board decisions in *Apple* and *Samsung*). For several reasons, the Office should not deny IPR institution based on speculation of what *might* occur at a future district court trial where the petitioner has served a *Sotera* stipulation. While avoiding two bites (unpatentability/invalidity) at the same apple (same patent claim) in two different fora is a sound consideration, it is one the district court is much better placed to enforce than is the Office. The district court need not speculate about future submissions of the patent challenger. It has all the evidence at hand. It is not constrained to speculate based on over-inclusive invalidity contentions served early in the action long before claims were narrowed, prior art was narrowed, and the *Sotera* stipulation was served. Moreover, only a small fraction of district court cases reach trial—fewer than 1 in 20.

In short, *Sotera* is not only binding precedent reaffirmed by the Office in its February and March guidance—it is sound policy. Director intervention is warranted to reaffirm that policy and correct the departure here.

### D.    That Most Challenged Claims Will Not Be Challenged In District Court Favors Not Discretionarily Denying Institution

The Board's disregard for the fact that most challenged claims are no longer asserted in the district court action directly conflicts with PTAB guidance. Ignoring this claim narrowing undermines the very purpose of IPR proceedings—established by Congress to improve patent quality and restore confidence in the presumption of validity that attaches to issued claims.

Each claim of a patent is, in effect, its own legal right. A patent owner can license or assert a single claim, and the validity of one claim generally stands independently of its siblings. For these reasons a single invalid claim can continue to chill innovation and impose costs on the public—even if other claims in the same patent are struck down. That is why the public policy underlying IPR proceedings applies with full force to every challenged claim, particularly those that will not be litigated in district court even if that action reaches trial.

Petitioner's supplemental *Fintiv* brief explained this, noting that only a small subset of the challenged claims remain in the district court case. Paper 9 at 2. That distinction weighs against discretionary denial under Factor 4. The PTAB recognized the same principle in *Apple Inc. v. Seven Networks, LLC*, IPR2020-00156,

Paper 10 at 17 (PTAB June 15, 2020), where the Board found that addressing 11 claims not being litigated in district court favored institution.

Yet the panel here gave no weight to the fact that most of the Petition's challenged claims are now outside the scope of the district court action. Decision at 9. That was an error of law—and an abuse of discretion.

### E.    The Director Should Institute IPR Because Factor 3 Favors And Factors 4 And 6 Strongly Favor Not Exercising Discretionary Denial

Factors 3, 4, and 6 collectively weigh decisively against discretionary denial, while Factor 1 is neutral. The Board correctly found Factor 3 favors not exercising discretionary denial. As explained above, under *Sotera*, Factor 4 strongly favors not exercising discretionary denial. Factor 6 also strongly favors not exercising discretionary denial because the Board found the Petition's merits to be strong: "Petitioner's challenge is straightforward and definitely satisfies the institution standard, even when balanced against Patent Owner's counterarguments," which "read like an opposition to an anticipation challenge." Decision at 10. The Director therefore should institute *inter partes* review. In the alternative, the Director should remand to the Board with directions to correct the errors noted herein and reconsider institution.

## V.    **CONCLUSION**

Given these clear errors and critical policy considerations, Director Review is warranted. Petitioner respectfully requests that the Director institute *inter partes* review.

Respectfully submitted,

Dated: April 17, 2025                By: /Roy Chamcharas/
                                                     Roy Chamcharas (Reg. No. 61,735)
                                                     roy.chamcharas@klarquist.com
                                                   KLARQUIST SPARKMAN, LLP
                                                   One World Trade Center, Suite 1600
                                                   121 S.W. Salmon Street
                                                   Portland, Oregon 97204
                                                   Tel: 503-595-5300
                                                   Fax: 503-595-5301

                                                   Lead Counsel for Petitioner

## CERTIFICATE OF SERVICE
## IN COMPLIANCE WITH 37 C.F.R. § 42.6(e)(4)

The undersigned certifies that on April 17, 2025, Petitioner emailed copies

of **PETITIONER'S REQUEST FOR DIRECTOR REVIEW** to the following

email addresses, which Patent Owner has agreed constitutes service. *See* Paper

4 (Patent Owner's Mandatory Notices).

jhannah@kramerlevin.com

jprice@kramerlevin.com

kkastens@kramerlevin.com

jfuller@kramerlevin.com

ckeller@kramerlevin.com

svdocketing@kramerlevin.com

By: /Roy Chamcharas/
Roy Chamcharas (Reg. No. 61,735)
roy.chamcharas@klarquist.com
KLARQUIST SPARKMAN, LLP
One World Trade Center, Suite 1600
121 S.W. Salmon Street
Portland, Oregon 97204
Tel: 503-595-5300
Fax: 503-595-5301

Counsel for Petitioner

# Patent Trial and Appeal Case Tracking System (P-TACTS)



Case #  IPR2024-01496  **INSTITUTION DENIED**

Patent #  8595641

Parties  SAP America, Inc. et al. v. Cyandia, Inc.

Tech center  2100    Art unit  2175

---

**AIA review information** | **Motions** | **Rehearing requests** | **Notices of appeal**

Expand all | Collapse all

## Documents & claims

**Documents** | **Claims**

Updated: 06/12 10:48AM

### Papers

Next available paper # 18

All 17 | Board 3 | Petitioner 6 | Patent Owner / Respondent 8



| Paper # | Filing date | Paper type | Document name | Pages | Filing party | Availability |
|---|---|---|---|---|---|---|
| 17 | 05/29/2025 | Order Denying Director Review of Institution Decision | Order Denying Director Review of Institution Decision | 3 | Board | Public |
| 16 | 05/19/2025 | Notice: Updated Mandatory Notice | Patent Owner's Updated Mandatory Notices | 5 | Patent Owner | Public |
| 15 | 04/24/2025 | Other: other | Authorized Response to Director Review Request | 8 | Patent Owner | Public |
| 14 | 04/17/2025 | Request for Director Review - Institution Decision | Petitioner's Request for Director Review | 18 | Petitioner | Public |
| 13 | 04/07/2025 | Institution Decision: Deny | Institution Decision: Deny | 12 | Board | Public |
| 12 | 03/28/2025 | Notice: Exhibit list | Patent Owner's Updated Exhibit List | 4 | Patent Owner | Public |
| 11 | 03/27/2025 | Notice: Updated Mandatory Notice | Petitioner's Updated Mandatory Notices | 5 | Petitioner | Public |
| 10 | 03/12/2025 | Other: other | Patent Owner's Supplemental Fintiv Brief | 5 | Patent Owner | Public |
| 9 | 03/12/2025 | Other: other | Petitioner's Supplemental Briefing Regarding Fintiv | 4 | Petitioner | Public |
| 8 | 02/25/2025 | Other: other | Patent Owner's Preliminary Sur-Reply | 13 | Patent Owner | Public |
| 7 | 02/11/2025 | Other: other | Petitioner's Reply to the Patent Owner Preliminary Response | 15 | Petitioner | Public |
| 6 | 01/09/2025 | POPR: filed | Patent Owner's Preliminary Response Under 37 C.F.R. § 42.107 | 47 | Patent Owner | Public |
| 5 | 10/11/2024 | Notice: Power of Attorney | Patent Owner's Power of Attorney | 4 | Patent Owner | Public |

Appx103

| Paper # ↓ | Filing date | Paper type | Document name | Pages | Filing party | Availability |
|---|---|---|---|---|---|---|
| 4 | 10/11/2024 | Notice: Mandatory Notice | Patent Owner's Mandatory Notices Under 37 C.F.R. 42.8(a)(2) | 5 | Patent Owner | Public |
| 3 | 10/09/2024 | Notice: Notice filing date accorded | Notice: Notice filing date accorded | 6 | Board | Public |
| 2 | 10/01/2024 | Notice: Power of Attorney | SAP POA (641) | 4 | Petitioner | Public |
| 1 | 10/01/2024 | Petition: as filed | SAP Petition (641) | 127 | Petitioner | Public |

## Exhibits

All 65   1000s 53   2000s 9   3000s 3     ▼   0

| Exhibit # ↓ | Filing date | Document name | Pages | Filing party | Availability |
|---|---|---|---|---|---|
| 3100 | 04/17/2025 | Ex. 3100 | 1 | Board | Public |
| 3002 | 04/10/2025 | Ex. 3002 | 4 | Board | Public |
| 3001 | 04/07/2025 | Ex. 3001 | 9 | Board | Public |
| 2009 | 03/28/2025 | Ex. 2009 | 13 | Patent Owner | Public |
| 2008 | 02/25/2025 | Ex. 2008 | 3 | Patent Owner | Public |
| 2007 | 01/09/2025 | Ex. 2007 | 3 | Patent Owner | Public |
| 2006 | 01/09/2025 | Ex. 2006 | 6 | Patent Owner | Public |
| 2005 | 01/09/2025 | Ex. 2005 | 9 | Patent Owner | Public |
| 2004 | 01/09/2025 | Ex. 2004 | 1 | Patent Owner | Public |
| 2003 | 01/09/2025 | Ex. 2003 | 6 | Patent Owner | Public |
| 2002 | 01/09/2025 | Ex. 2002 | 3 | Patent Owner | Public |
| 2001 | 01/09/2025 | Ex. 2001 | 3 | Patent Owner | Public |
| 1047 | 02/11/2025 | Plaintiff's Supp Prelim Infringement Contentions Claim Chart | 95 | Petitioner | Public |
| 1045 | 02/11/2025 | Sotera Stipulation | 1 | Petitioner | Public |
| 1044 | 10/01/2024 | Affidavit of Nathaniel Frank-White, Records Request Processor (9.20.2024) | 17 | Petitioner | Public |
| 1043 | 10/01/2024 | Library of Congress Catalog: Mastering IBM WebSphere Portal (2004) | 1 | Petitioner | Public |
| 1042 | 10/01/2024 | Copyright Office Public Catalog: Mastering IBM WebSphere Portal (2004) | 1 | Petitioner | Public |
| 1041 | 10/01/2024 | U.S. Patent Appl Pub. No. 2005/0159823 | 21 | Petitioner | Public |
| 1040 | 10/01/2024 | Claims Listing | 13 | Petitioner | Public |
| 1039 | 10/01/2024 | Louch-U.S. Patent Appl Pub. No. 2007/0130541 | 34 | Petitioner | Public |
| 1038 | 10/01/2024 | WSRP standard 2.0 specification | 144 | Petitioner | Public |
| 1037 | 10/01/2024 | WSRP standard 1.0 specification | 86 | Petitioner | Public |
| 1036 | 10/01/2024 | U.S. Patent No. 8,751,948 | 48 | Petitioner | Public |
| 1035 | 10/01/2024 | Mandalia-U.S. Patent Appl Pub. No. 2007/0033251 | 10 | Petitioner | Public |

Appx104

| Exhibit # ↓ | Filing date | Document name | Pages | Filing party | Availability |
|---|---|---|---|---|---|
| 1034 | 10/01/2024 | Chowdary-U.S. Patent Appl Pub. No. 2007/0283020 | 14 | Petitioner | Public |
| 1033 | 10/01/2024 | Copyright Office Public Catalog: IBM WebSphere Everyplace Access V5 | 1 | Petitioner | Public |
| 1032 | 10/01/2024 | Copyright Office Public Catalog: IBM WebSphere Everyplace Access V5 | 1 | Petitioner | Public |
| 1031 | 10/01/2024 | Copyright Office Public Catalog: IBM WebSphere Everyplace Access V5 | 1 | Petitioner | Public |
| 1030 | 10/01/2024 | Library of Congress Catalog: IBM WebSphere Everyplace Access V5 Handbook | 1 | Petitioner | Public |
| 1029 | 10/01/2024 | Copyright Office Public Catalog: IBM WebSphere Everyplace Access V5 | 1 | Petitioner | Public |
| 1028 | 10/01/2024 | Library of Congress Catalog: IBM Rational Application Developer V6, Portlet | 1 | Petitioner | Public |
| 1027 | 10/01/2024 | Copyright Office Public Catalog: IBM Rational Application Developer V6 | 1 | Petitioner | Public |
| 1026 | 10/01/2024 | WebSphere Application Server V6-System Management and Configuration (pt1) | 573 | Petitioner | Public |
| 1026 | 10/01/2024 | WebSphere Application Server V6-System Management and Configuration (pt2) | 464 | Petitioner | Public |
| 1025 | 10/01/2024 | Affidavit of Nathaniel Frank-White, Records Request Processor (8.16.2024) | 97 | Petitioner | Public |
| 1024 | 10/01/2024 | Austin-Lane-U.S. Patent Appl Pub. No. 2004/0044736 | 21 | Petitioner | Public |
| 1023 | 10/01/2024 | Newton 2004-Newton's Telecom Dictionary (20th ed. 2004) (excerpts) | 13 | Petitioner | Public |
| 1022 | 10/01/2024 | Pogue 2007-Mac OS X Leopard The Missing Manual (excerpts) | 10 | Petitioner | Public |
| 1021 | 10/01/2024 | Pogue 2007 (iPhone)-iPhone The Missing Manual (excerpts) | 7 | Petitioner | Public |
| 1020 | 10/01/2024 | Russo-U.S. Patent Appl Pub. No. 2007/0174782 | 18 | Petitioner | Public |
| 1019 | 10/01/2024 | Microsoft Internet Explorer ResourceKit, Microsoft (1998) (pt 1) | 496 | Petitioner | Public |
| 1019 | 10/01/2024 | Microsoft Internet Explorer ResourceKit, Microsoft (1998) (pt 2) | 410 | Petitioner | Public |
| 1018 | 10/01/2024 | Cok-U.S. Patent No. 5,548,692 | 7 | Petitioner | Public |
| 1017 | 10/01/2024 | Microsoft Computer Dictionary (5th ed.) (excerpts) | 17 | Petitioner | Public |
| 1016 | 10/01/2024 | Jones-U.S. Patent Appl Pub. No. 2008/0256643 | 20 | Petitioner | Public |
| 1015 | 10/01/2024 | Santoro-U.S. Patent No. 7,376,907 | 44 | Petitioner | Public |
| 1014 | 10/01/2024 | U.S. Provisional Application No. 61/052,765 | 59 | Petitioner | Public |
| 1013 | 10/01/2024 | IBM WebSphere Portal V5: A Guide for Portlet Application Development | 573 | Petitioner | Public |
| 1012 | 10/01/2024 | IBM WebSphere Everyplace Access Version 4.3 Handbook for Developers | 1321 | Petitioner | Public |
| 1011 | 10/01/2024 | IBM WebSphere Portal Collaboration Security Handbook (December 2004) | 323 | Petitioner | Public |
| 1010 | 10/01/2024 | IBM Workplace Web Content Management for Portal 5.1 and IBM Workplace (pt1) | 369 | Petitioner | Public |
| 1010 | 10/01/2024 | IBM Workplace Web Content Management for Portal 5.1 and IBM Workplace (pt2) | 294 | Petitioner | Public |
| 1009 | 10/01/2024 | WebSphere-Everyplace-4-IBM WebSphere Everyplace Access V5 Handbook | 408 | Petitioner | Public |

Appx105

Case: 25-133     Document: 2     Page: 138     Filed: 06/16/2025

| | Exhibit # ↓ | Filing date | Document name | Pages | Filing party | Availability |
|---|---|---|---|---|---|---|
| ✓ | 1008 | 10/01/2024 | WebSphere-Everyplace-3-IBM WebSphere Everyplace Access V5 Handbook | 331 | Petitioner | Public |
| ✓ | 1007 | 10/01/2024 | WebSphere-Everyplace-2-IBM WebSphere Everyplace Access V5 Handbook | 471 | Petitioner | Public |
| ✓ | 1006 | 10/01/2024 | WebSphere-Everyplace-1-IBM WebSphere Everyplace Access V5 Handbook | 457 | Petitioner | Public |
| ✓ | 1005 | 10/01/2024 | Ben-Natan-Mastering IBM WebSphere Portal (pt 1) | 154 | Petitioner | Public |
| ✓ | 1005 | 10/01/2024 | Ben-Natan-Mastering IBM WebSphere Portal (pt 2) | 143 | Petitioner | Public |
| ✓ | 1005 | 10/01/2024 | Ben-Natan-Mastering IBM WebSphere Portal (pt 3) | 135 | Petitioner | Public |
| ✓ | 1005 | 10/01/2024 | Ben-Natan-Mastering IBM WebSphere Portal (pt 4) | 117 | Petitioner | Public |
| ✓ | 1004 | 10/01/2024 | WebSphere-Portal-IBM Rational Application Developer V6 Portlet (pt 1) | 658 | Petitioner | Public |
| ✓ | 1004 | 10/01/2024 | WebSphere-Portal-IBM Rational Application Developer V6 Portlet (pt 2) | 387 | Petitioner | Public |
| ✓ | 1003 | 10/01/2024 | Declaration of Christopher Schmandt | 150 | Petitioner | Public |
| ✓ | 1002 | 10/01/2024 | File History of U.S. Patent No. 8,595,641 | 357 | Petitioner | Public |
| ✓ | 1001 | 10/01/2024 | 641 Patent-U.S. Patent No. 8,595,641 | 18 | Petitioner | Public |

> **Real party**

> **Counsel**

> **Payments**

Appx106